Mary ANDREWS, in her Official Capacity as Civil Service Director, of the City of Lubbock, Texas, and as Managing Director of Human Resources for the City of Lubbock, Texas; Ken Walker, in his Official Capacity as chief of Police of the City of Lubbock, Texas; and the City of Lubbock, Texas, Appellants,

v.

Richard Dewayne PROCTOR, Hugh Glen Osborn, and John Yeates, Appellees.

No. 07–95–0399–CV.

Court of Appeals of Texas, Amarillo.

July 25, 1997.

Rehearing Overruled Sept. 23, 1997.

Cecil Kuhne and William J. Wade, Crenshaw, Dupree & Milam, L.L.P., Jean E. Shotts, Jr., Jeff Hartsell, City of Lubbock, Lubbock, for appellants.

Christian J. Gros, Combined Law Enforcements Associations of Texas, San Antonio, Denette Vaughn, Lubbock, G. Stewart Whitehead, Asst. Atty. Gen., Dan Morales, Jorge Vega, Laquita A. Hamilton and Toni Hunter, Austin, for appellees.

Before BOYD, C.J., DODSON, J., and REYNOLDS, Senior Justice.*

DODSON, Justice.

We withdraw our original opinion in this appeal, dated August 6, 1996, and substitute this opinion in lieu thereof.

Mary Andrews, in her official capacity as Civil Service Director of the City of Lubbock, Texas, and Managing Director of Human Resources for the City of Lubbock; Ken Walker, in his official capacity as Chief of Police of the City of Lubbock, Texas, (Chief Walker); and the City of Lubbock, Texas (collectively referred to herein as "the City") appeal from a summary judgment rendered in favor of police officers Richard Dewayne Proctor, Hugh Glen Osborn, and John Yeates, (collectively referred to herein as "the Officers"). The judgment declared § 143.057 of the Texas Local Government Code constitutional, and issued a writ of mandamus compelling the City's compliance with its provisions. Because we conclude that § 143.057 of the Texas Local Government Code is an unconstitutional delegation of legislative authority under Article II, § 1 of the Texas Constitution, we reverse the trial court's summary judgment and render judgment for the City.

The record shows that the Officers were suspended from the City of Lubbock Police Force by Chief Walker because of separate alleged violations of Lubbock's Local Civil Service Rules. Each officer elected to appeal his suspension to an independent hearing examiner. Tex. Local Gov't Code Ann. § 143.057(a) (Vernon 1988). Under § 143.057, when a fire fighter or police officer is suspended, passed over for a promotion, or recommended for a demotion by the head of his or her department, the fire fighter or police officer may appeal the decision. Tex. Loc. Gov't Code Ann. § 143.057(a) (Vernon 1988). The appeal may be made to either the City's Civil Service Commission, Tex. Loc. Gov't Code Ann. § 143.010 (Vernon 1988), or to a "qualified" and "neutral" hearing examiner selected from a list of seven candidates which is provided by the American Arbitration Association ("AAA") or the Federal Mediation and Conciliation Service ("FMCS"). Tex Loc. Gov't Code Ann. § 143.057(d) (Vernon 1988).

When the fire fighter or police officer elects to appeal to the hearing examiner, the list of seven candidates is submitted to the fire fighter or police officer and the department head. If, after receiving the list, the fire fighter or police officer and their department head cannot agree on one of the candidates, they alternately strike names from the list of candidates. Tex. Loc. Gov't Code Ann. § 143.057(d) (Vernon 1988). The last name to remain on the list is the hearing examiner. Id.

After receiving Officer Proctor's and Officer Osborn's requests for an independent

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't.Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

hearing examiner, the City requested a list of candidates from AAA, but refused to comply with the striking provision. After receiving Officer Yeates's request, the City refused to even request a list from either the AAA or FMCS. The City refused to comply with § 143.057 of the Local Government Code, asserting that the statute was unconstitutional. Both parties sought a declaratory judgment, and the Officers also sought mandamus relief from the trial court.

The Officers requested that the trial court issue a declaratory judgment finding § 143.057 of the Local Government Code constitutional and issue a writ of mandamus compelling the City to comply with the arbitration provisions of the statute. Conversely, the City requested that the trial court issue a declaratory judgment finding § 143.057 of the Local Government Code unconstitutional. Both sides filed motions for summary judgment. The trial court granted the Officers' motion and denied the City's motion. In the judgment, the court declared § 143.057 of the Local Government Code constitutional and issued a writ of mandamus directing the City to comply with the statute's provisions. The City appeals from the trial court's judgment by four points of error.

By points of error one and three, the City asserts that § 143.057 is unconstitutional because it deprives the City of due process and equal protection of the law under the Federal Constitution and equal protection and due course of law under the Texas Constitution. By its second point of error, the City claims that § 143.057 of the Local Government Code is unconstitutional because it confers legislative authority on a private entity without providing any guidelines for that entity to follow in choosing "qualified" and "neutral" hearing examiners.

The Officers assert that the City does not have standing to challenge the constitutionality of § 143.057 of the Local Government Code. In this connection, we conclude that the City has no standing to bring a due process challenge, a due course of law challenge, or an equal protection challenge under Article I of the Texas Constitution and the fourteenth amendment to the United States Constitution (*i.e.*, points one and three).

However, the City does have standing to challenge the statute as an impermissible delegation of legislative authority under Article II of the Texas Constitution (point of error two).

▪ First, we will discuss the standing challenge directed at the first and third points of error. It is the general rule that a municipality, county or other public corporation, or governmental agency or other political subdivision created and controlled by the state is not a "person" within the meaning of the Bill of Right's due course of law, equal rights, and privileges and immunities guarantees of the Texas Constitution and similar rights provisions of the United States Constitution. *Durish v. Texas State Bd. of Ins.,* 817 S.W.2d 764, 767 (Tex.App.—Texarkana 1991, no writ); *McGregor v. Clawson,* 506 S.W.2d 922, 929 (Tex.Civ.App.—Waco 1974, no writ). *See also, Nootsie v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 662 (Tex.1996). Accordingly, we overrule the City's first and third points of error by which the City asserts due process and equal protection claims under the state and federal constitutions.

Next, we discuss the officers' standing challenge to the City's second point of error. The City claims the challenged section is unconstitutional because the act confers legislative authority in a private non-governmental entity without providing guidelines for that entity to follow in choosing "qualified" and "neutral" hearing examiners. This is a non-Bill of Rights challenge under Article II, § 1 of the Texas Constitution.

▪ The above stated general rule applicable to the Bill of Rights matter (Article I, §§ 1 and 9) does not apply to other constitutional provisions dealing with non-Bill of Rights issues. Without doubt, "[t]he constitution is the highest law of the state, and all public officials are sworn to uphold and defend it." *Durish v. Texas State Bd. of Ins.,* 817 S.W.2d at 767. State governmental officials at all levels have not only the right, but the duty to challenge actions to be taken pursuant to a statute that is unconstitutional. State governmental officials represent the people in their respective sphere of authority

and have a right and duty to protect the people from state action under oppressive unjust and unconstitutional laws. *Id.* at 767. The general test for standing to bring non-Bill of Rights constitutional challenges is "that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Nootsie v. Williamson County Appraisal Dist.*, 925 S.W.2d at 662.

■ As in *Nootsie*, the City has an interest in this case because it is charged with operating under a statute that it believes violates the Texas Constitution. This interest gives the City "a sufficient stake in this controversy that the declaration sought will resolve." *Nootsie v. Williamson County Appraisal Dist.*, 925 S.W.2d at 662. Accordingly, and without a further prolonged discussion, we deem it suffice to simply state that the matter before us meets both prongs of the standing rule, the City has standing to bring the challenge advanced in their second point of error, and we have subject-matter jurisdiction to hear the issue.

Next, we consider the City's constitutional issue advanced by its second point of error. The language of the statute in issue is found in § 143.057(d), and states in pertinent part:

> If the parties do not agree on the selection of a hearing examiner on or within 10 days after the date the appeal is filed, the director shall immediately request a list of seven *qualified neutral* arbitrators from the American Arbitration Association or the Federal Mediation and Conciliation Service, or their successors in function.

(emphasis added). The City asserts that the phrase "qualified neutral arbitrators" is impermissibly vague and therefore leaves the determination of qualifications for arbitrators to a private entity on a subjective *ad hoc* basis. The Officers assert that this language is not vague when given its plain and ordinary meaning. We agree with the City.

■ The City's point of error presents a question of law. When both parties to a lawsuit move for summary judgment and the trial court grants one of the motions and denies the other, we consider the issues presented and may reverse the trial court's judgment and render the judgment that the trial court should have rendered. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Fort Bend Central Appraisal Dist. v. Hines Wholesale Nurseries*, 844 S.W.2d 857, 859 (Tex.App.—Texarkana 1992, writ denied).

When considering the constitutionality of a statute, we presume that: 1) compliance with the constitutions of this state and the United States is intended; 2) the entire statute is intended to be effective; 3) a just and reasonable result is intended; 4) a result feasible of execution is intended; and 5) public interest is favored over any private interest. Tex. Gov't Code Ann. § 311.021 (Vernon 1988).

■ The rules governing legislative grants of authority are well established. In delegating its authority, the Texas Legislature must "establish reasonable standards to guide the entity to which the powers are delegated." *Edgewood Independent School Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex.1995) (quoting *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex.1992)). The language granting the authority must not be so broad and vague that people "of common intelligence must necessarily guess at its meaning and differ as to its application." *Texas Antiquities Committee v. Dallas County Community College Dist.*, 554 S.W.2d 924, 928 (Tex.1977) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). However, the legislature need not anticipate every detail or circumstance, for this would defeat the purpose behind delegating its authority. *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex.1992).

We conclude that the term "qualified" as used in § 143.057(d) is impermissibly vague. When a word is not defined in a statute, as in this instance, we are to give the word its ordinary meaning. Tex. Gov't Code Ann. § 312.002 (Vernon 1988); *see, State v. Pub. Util. Comm'n of Texas*, 883 S.W.2d 190, 200 (Tex.1994). Webster's Dictionary defines "qualified" as "having complied with the specific requirements or precedent conditions (as for an office or employment)." Webster's Third New International Dictionary 1858 (1976) (parenthetical in original). In other

words, the word "qualified" is defined by the requirements of a particular situation.

Section 143.057(d), in effect, empowers the AAA and FMCS to decide what the qualifications of a hearing examiner will be. However, the legislature does not set forth any standards to guide the AAA or FMCS in setting these qualifications, *i.e.*, the legislature does not give the AAA or FMCS any standards to apply when setting the requirements of the position of hearing examiner. Therefore, the AAA and FMCS are given free reign to arbitrarily decide the qualifications of hearing examiners without reference to any guiding principles whatsoever. It is evident that § 143.057(d) is devoid of any standards to guide the AAA or FMCS as required by the Texas Constitution.

Further, we note that the legislature has set standards that the members of the Civil Service Commission must meet before they are appointed by the chief executive of the municipality. Tex. Loc. Gov't Code Ann. § 143.006(c) (Vernon 1988). Therefore, the legislature has given the chief executives of municipalities standards by which to judge the qualifications of Civil Service Commission appointees. The Civil Service Commission shares the power to review disciplinary decisions of department heads with the hearing examiners. *See*, Tex. Loc. Gov't Code Ann. §§ 143.006(c); 143.057(d) (Vernon 1988).

In effect, then, the AAA and FMCS are given the same powers of appointment as the chief executive of the municipality but are not guided by any standards on which to judge the qualifications of their appointees, as is the chief executive in appointing Civil Service Commission members. When contrasted with the standards set forth in § 143.006(c), it is even more evident that § 143.057(d) not only sets forth unclear standards, it is devoid of any standards providing guidance to the AAA and FMCS in deciding whether hearing examiners are qualified.

We are mindful of the Tyler Court of Appeals' decision in *Blair v. Razis,* 926 S.W.2d 784 (Tex.App.—Tyler 1996, no writ), in which that Court concluded that § 143.057(d) of the Local Government Code was constitutional. However, we respectfully question the Tyler Court's statement that, "[a] plain reading of the Act indicates that the legislature's intent in providing these modifiers [qualified and neutral] was to ensure that a capable person was selected as a third party hearing examiner." *Id.* at 787. The Tyler Court's statement begs the question.

A "capable" person in this instance is a person capable of performing the duties of a hearing examiner. What makes a person capable of performing the duties of a hearing examiner are his or her qualifications. But, as stated above, the legislature has failed to provide any standards by which those qualifications are to be delineated. Therefore, under § 143.057(d), those qualifications may be whatever the AAA or FMCS choose them to be on an *ad hoc* basis. By any reading of § 143.057(d), then, it is clear that people "of common intelligence must necessarily guess at its meaning and differ as to its application." *Texas Antiquities Committee v. Dallas County Community College Dist.,* 554 S.W.2d at 928. Accordingly, we respectfully disagree with the conclusion of the Tyler Court in *Blair.*

"The separation of powers clause requires that the standards of delegation be 'reasonably clear and hence acceptable as a standard of measurement.'" *Edgewood Independent School Dist v. Meno,* 917 S.W.2d at 740 (quoting *Jordan v. State Bd. of Ins.,* 160 Tex. 506, 334 S.W.2d 278, 280 (Tex.1960)). It is clear that § 143.057(d) of the Local Government Code is devoid of any standards of delegation, much less reasonably clear standards. Consequently, we conclude that § 143.057 of the Texas Local Government Code is an unconstitutional delegation of legislative authority under Article II, § 1 of the Texas Constitution. Further, because of this conclusion, we need not consider the City's fourth point of error, dealing with the City's "home rule" powers.[1] Tex.R.App. P. 90(a) (Vernon Pamph.1997).

---

1. We further decline discussion of two issues not before us. They are: 1) whether the legislature has authority to delegate a governmental function (*i.e.,* selection of hearing officer) to a private non-government entity; and 2) whether the legislature has authority to totally divest the District Court (*i.e.,* the judiciary) of jurisdiction to hear a judicial controversy.

Accordingly, we reverse the summary judgment of the trial court and render judgment that § 143.057 of the Texas Local Government Code is unconstitutional as an invalid delegation of legislative authority.

We acknowledge that the officers have filed two motions for rehearing directed at our original opinion dated August 6, 1996, and our resulting judgment. Since that opinion and resulting judgment are withdrawn and this opinion and resulting judgment are substituted in lieu thereof, we overrule those motions for rehearing as moot.