Richard Dewayne PROCTOR, Hugh Glen Osborn, John Yeates, and Dan Morales, Attorney General of Texas, Petitioners,

v.

Mary ANDREWS, in her official capacity as Civil Service Director of The City of Lubbock, Texas and as Managing Director of Human Resources for The City of Lubbock, Texas, Ken Walker, in his official capacity, et al., Respondents.

No. 97–1039.

Supreme Court of Texas.

Argued April 1, 1998.

Decided July 3, 1998.

Rehearing Overruled July 3, 1998.

Nancy A. Trease, Austin, Denette Vaughn, Lubbock, B. Craig Deats, Austin, for Petitioners.

Jeffrey C. Hartsell, Cecil Kuhne, Lubbock, for Respondents.

PHILLIPS, Chief Justice, delivered the opinion for a unanimous Court.

Respondents' motion for rehearing is overruled. Our opinion of June 5, 1998, is withdrawn and the following substituted in its place.

We must determine whether section 143.057(d) of the Civil Service Act, TEX. LOC. GOV'T CODE §§ 143.001 –.134,[1] violates the Texas Constitution either by impermissibly delegating legislative authority to two arbitration services or by impermissibly infringing on a home rule city's governmental authority to direct, control, and discipline its police officers. We hold that section 143.057(d) is not unconstitutional on either ground. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment earlier rendered by the trial court compelling the City of Lubbock to comply with section 143.057(d).

## I

Under the Civil Service Act, a police officer or fire fighter suspended, passed over for a promotion for disciplinary reasons, or recommended for demotion has the choice of appealing the action to the local civil service commission, section 143.010, or to an independent third-party hearing examiner, section 143.057. Section 143.057(d) provides that if the officer and department head cannot agree on the selection of an impartial hearing examiner within ten days after the appeal is filed, the City's Civil Service Director must request a list of seven "qualified neutral arbitrators" from either the American Arbitration Association ("AAA") or the Federal Mediation and Conciliation Service ("FMCS"). § 143.057(d). If the officer and department head cannot agree on one of the listed arbitrators, the two parties select the hearing examiner by alternately striking names from the list. *Id.* The hearing examiner selected has the same powers and duties as the Civil Service Commission. § 143.057(f). The statute also provides that the hearing examiner's decision is final and binding. § 143.057(c). An officer choosing this option waives the right to appeal the hearing examiner's decision to a district court unless the hearing examiner was without jurisdiction, exceeded his or her jurisdiction, or the award was procured by fraud, collusion, or other unlawful means. §§ 143.057(c), (j).

This appeal involves three cases consolidated for trial. Officers Richard Dewayne Proctor, Hugh Glen Osborn, and John Yeates were suspended from the City of Lubbock Police Force for separate alleged violations of the Local Civil Service Rules. The three officers elected to have their appeals heard by a hearing examiner under section 143.057. In officers Proctor's and Osborn's cases, the City requested the list of names from the AAA, but refused to comply with the striking provision. In Officer Yeates's case, the City refused even to request a list of qualified neutral arbitrators. Proctor filed suit seeking a declaratory judgment that the statute is constitutional and mandamus relief to compel the defendants to proceed with a hearing before a third-party hearing examiner. The City of Lubbock, Mary Andrews in her official capacity as Lubbock's Civil Service Director, and Ken Walker in his official capacity as Lubbock's Chief of Police ("the City") counterclaimed for a declaratory judgment that section 143.057(d) is unconstitutional. The City also subsequently filed suit against Osborn and Yeates seeking declaratory judgments that the hearing examiner provision of section 143.057 is unconstitutional. The officers counterclaimed, seeking their own declarations that the statute is constitutional and mandamus relief requiring the City to comply with section 143.057(d). The trial court consolidated all three cases. The Attorney General intervened to defend the statute's constitutionality.

The City and the police officers all moved for summary judgment. The trial court denied the City's motion and granted the officers' motions, declaring section 143.057 constitutional. The City appealed. The court of appeals reversed the trial court's judgment and granted the City summary judgment, holding that section 143.057(d) impermissibly delegates legislative authority in violation of Article II, Section 1 of the Texas Constitution. *Andrews v. Proctor*, 950 S.W.2d 750 (Tex.App.—Amarillo.1997). We granted the officers' and the Attorney General's separate petitions for review.

■ As a preliminary matter, we note that all parties erroneously rely on Article II,

---

**1.** Unless otherwise indicated, all references are to the Texas Local Government Code.

Section I of the Texas Constitution as the source for the constitutional prohibition of delegations of legislative authority to private entities. This section provides for the separation of powers of the three branches of the state government and prohibits any of the three departments from exercising any power properly attached to either of the other branches. Article II, Section 1 is a direct prohibition of the blending of the legislative, executive, and judicial departments. Article III, Section 1 of the Texas Constitution vests in the Legislature the power to make laws. While noting that "the principle of non-delegation has certain qualifications," the interpretive commentary to this article states that "[a] settled maxim of constitutional law is that the power conferred upon the legislature to make the laws cannot be delegated by that department to any other body or authority." Tex. Const. art. III, § 1 interp. commentary; *see also, e.g., Brown v. Humble Oil & Ref. Co.,* 126 Tex. 296, 83 S.W.2d 935, 941 (1935). As such, Article II and Article III both apply when the constitutionality of the Legislature's delegation of power to another branch of state government, such as an administrative agency, is challenged. Article II is not relevant, however, to a legislative delegation of authority to an entity that is not a part of state government. Therefore, the proper constitutional source for a prohibition of delegations to private entities or another government's entities is Article III, Section 1 of the Constitution. This Court's recent opinion in *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen,* 952 S.W.2d 454, 465–475 (Tex.1997), analyzes the constitutionality of a legislative delegation of power to a private entity under Article II, Section 1. However, in *Boll Weevil,* whether the Foundation was a state or a private entity was at issue. *Id.* at 470–71. Because the delegates in the instant case are not affiliated with any department of the state government, the constitutional provision that would be violated by an impermissible delegation is Article III, Section 1, not Article II, Section 1. We therefore analyze the delegation under Article III.

The City asserts that section 143.057(d) is an overly broad delegation of legislative authority to a private entity in violation of the Texas Constitution. The City contends that the terms "qualified" and "neutral" are unconstitutionally vague. Thus, by enacting section 143.057(d), the Legislature conferred on AAA and FMCS the authority to determine what specific requirements make an arbitrator neutral and qualified, and therefore eligible to serve as a hearing examiner under the statute.

The City also contends that the provision unconstitutionally infringes on its powers as a home rule city. We consider that argument first.

## II

The City argues that section 143.057(d) violates the constitutional authority granted to home rule cities under Article XI, Section 5 of the Texas Constitution by infringing on the City's governmental authority to direct, control, and discipline its police officers and firefighters. We reject this argument.

"A home rule city derives its power not from the Legislature but from Article XI, Section 5 of the Texas Constitution.... [I]t is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers." *Lower Colo. Riv. Auth. v. City of San Marcos,* 523 S.W.2d 641, 643 (Tex.1975) (citation omitted). While a home rule city thus has all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter, Tex. Const. art. XI, § 5, these broad powers may be limited by statute when the Legislature's intention to do so appears "with unmistakable clarity." *See, e.g., Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 490–491 (Tex.1993); *City of Sweetwater v. Geron,* 380 S.W.2d 550, 552 (Tex.1964). Assuming that delegating authority to a third party to review the City's discipline of its police officers is an infringement of the City's police power, such infringement is permissible if the Legislature has, by general law, clearly intended to do so. *See, e.g., Dallas Merchant's and Concessionaire's Ass'n,* 852 S.W.2d at 491–492. It is unmistakably clear from a review of section 143.057 that the Legislature intended to prevent cities under the Civil Service Act from requiring disciplin-

ary action appeals to be heard only by their civil service commissions. *See* § 143.057. "Municipal corporations [including home rule cities] are created for the exercise of certain functions of government.... [I]n so far as their character is governmental, they are agencies of the state, and subject to state control." *Yett v. Cook*, 115 Tex. 205, 281 S.W. 837, 842 (1926). We therefore hold that section 143.057 of the Civil Service Act does not unconstitutionally infringe on the City's home rule authority to discipline its police officers.

### III

The City argues that section 143.057(d) is an unconstitutional delegation of legislative authority because it does not provide sufficient standards to inform the AAA and the FMCS how to determine which arbitrators are "qualified" and "neutral" and therefore capable of serving as hearing examiners. We also reject this contention.

### A

■■■■ As a preliminary matter, we turn to petitioners' contention that the City's argument is a due process challenge that the City lacks standing to assert because municipalities do not enjoy due process rights. *See Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Nootsie, Ltd. v. Williamson Co. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996); *Deacon v. City of Euless*, 405 S.W.2d 59, 62 (Tex.1966); *see generally* 2 EUGENE MCQUILLIN, MUNICIPAL CORPORATIONS §§ 4.19 & 4.20 (3d ed.1988). We agree with the court of appeals that the City has no standing to raise due process and equal protection challenges. 950 S.W.2d at 752. But, as the court of appeals did, we reject the petitioners' argument that the City's challenge to the statute as an impermissible delegation of legislative authority is not a separate argument which the City may bring. *Id.* at 752–53. Courts have recognized that a municipal corporation or other government subdivision can bring a constitutional challenge based on a provision outside the bill of rights and its guarantees to "persons" and "citizens." *See Texas Workers' Compensation Comm'n v. City of*

*Bridge City*, 900 S.W.2d 411, 414 (Tex.App.— Austin 1995, writ denied). The City has standing in this case to assert that section 143.057(d) impermissibly delegates legislative authority "because it is charged with implementing a statute it believes violates the Texas Constitution." *Nootsie, Ltd.*, 925 S.W.2d at 662. "This interest provides the [City] with a sufficient stake in this controversy to assure the presence of an actual controversy that the declaration sought will resolve." *Id.*

### B

In examining the delegation, the parties treat both the AAA and the FMCS as private entities, when in fact the FMCS is an independent federal agency. *See* 29 U.S.C.A. § 171. It may be that a state legislative delegation of authority to a federal agency is subject to less searching scrutiny than a similar delegation to a private entity. *See Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 469 (Tex.1997) ("[W]e believe it axiomatic that courts should subject private delegations to a more searching scrutiny than their public counterparts."). Because the parties do not address this issue, we will review both delegations under the standard applicable to private entities. Only if the delegation to the FMCS fails under that test would we need to decide whether a more deferential standard is warranted.

### C

■■■ The non-delegation doctrine of Article III, Section 1 has certain qualifications. The Legislature may delegate to municipalities that have not adopted home rule charters local legislative power adequate to execute the purposes for which they were created. *See Stanfield v. State*, 83 Tex. 317, 18 S.W. 577, 578 (1892). The Legislature may delegate its powers to administrative agencies to establish rules and regulations when the Legislature has provided reasonable standards to guide the agencies in carrying out a legislatively prescribed policy. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995); *Railroad Comm'n of Texas v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex.

1992). The Legislature can also delegate authority to private entities "if the legislative purpose is discernible and there is protection against the arbitrary exercise of power." *Office of Pub. Ins. Counsel v. Texas Auto. Ins. Plan*, 860 S.W.2d 231, 237 (Tex.App.—Austin 1993, writ denied); *see also Central Power & Light v. Sharp*, 919 S.W.2d 485, 492 (Tex.App.—Austin 1996), *writ denied per curiam*, 960 S.W.2d 617 (Tex.1997).

■ We recently considered the constitutionality of a private delegation of legislative authority in *Texas Boll Weevil Eradication Foundation, Inc.*, 952 S.W.2d at 465–475. In *Boll Weevil*, we stated that delegations of legislative authority to private entities under Article II are subject to "more searching scrutiny" than delegations to their public counterparts, *id.* at 469, and set out an eight-factor test to determine if the Legislature has impermissibly delegated its authority to a private entity. *Id.* at 472. This test is equally applicable to delegations under Article III. To determine whether section 143.057(d) impermissibly delegates legislative authority to private entities to decide what qualifications an impartial hearing examiner must possess, we apply the eight-factor test set out in *Boll Weevil*:

1. Are the private delegate's actions subject to meaningful review by a state agency or other branch of state government?

2. Are the persons affected by the private delegate's actions adequately represented in the decisionmaking process?

3. Is the private delegate's power limited to making rules, or does the delegate also apply the law to particular individuals?

4. Does the private delegate have a pecuniary or other personal interest that may conflict with his or her public function?

5. Is the private delegate empowered to define criminal acts or impose criminal sanctions?

6. Is the delegation narrow in duration, extent, and subject matter?

7. Does the private delegate possess special qualifications or training for the task delegated to it?

8. Has the Legislature provided sufficient standards to guide the private delegate in its work?

*Id.* The court of appeals focused only on the last factor, whether the Legislature did not provide the AAA or FMCS with adequate standards and guidelines to use to determine which arbitrators are qualified to serve as hearing examiners under the Act. 950 S.W.2d at 753–54. The court determined that the term "qualified" is impermissibly vague, leaving section 143.057(d) "devoid of any standards to guide the AAA or FMCS." 950 S.W.2d at 754. However, a delegation challenge requires a more comprehensive review.

■ Thus, we consider all eight factors, keeping in mind that if it is possible to interpret the language of the statute in a manner that renders it constitutional, we must do so. *See Nootsie, Ltd.*, 925 S.W.2d at 662. "Statutes are given a construction consistent with constitutional requirements, when possible, because the legislature is presumed to have intended compliance with [the constitution]." *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 715 (Tex.1990); *see also* TEX. GOV'T CODE § 311.021(1).

Before applying the factors, it is important to focus on the issue the City frames. The City does not contend that the Legislature impermissibly delegated authority to hear appeals to a private decisionmaker. While this broader delegation of authority was discussed in amici briefs submitted by the cities of Marshall, Amarillo, and Garland, and suggested at the oral argument of this case, it was not a part of the City's case either in the courts below or here. Instead, the City asserts only that the Legislature has failed to provide adequate guidelines for the AAA and FMCS to follow in choosing "qualified neutral arbitrators" to serve as hearing examiners. As such, we review only the delegation of authority to determine which arbitrators are qualified and neutral.

### Meaningful Governmental Review

■ The first factor weighs against the delegation. The AAA or FMCS's selection of the seven arbitrators submitted to the parties is not subject to any meaningful review. From the statutory text, it does not appear

that any governmental branch or body could review a claim that the hearing examiners provided by AAA or FMCS on the list of seven are not qualified or neutral, or are otherwise undesirable to a party.[2] *See* § 143.057. However, as discussed more fully under the second factor, while there is no review of the delegate's selection of the seven arbitrators submitted, the parties may eliminate from the list those they deem unqualified or biased using the striking mechanism the statute provides. *See* § 143.057(d). This right is somewhat constrained by the fact that, in the end, one of those on the list will be selected, even if one or both parties are not satisfied with that individual. *Id.*

### Adequate Representation of Affected Persons

■ The second factor weighs in favor of the delegation. While the parties do not have a say in determining which arbitrators are submitted for their consideration, they are actively involved in choosing which arbitrator from the list supplied will serve as their hearing examiner. Importantly, the statute provides that the parties are free to agree on an impartial hearing examiner without resort to the AAA or FMCS. § 143.057(d). If the parties cannot agree within the specified time period, the City must request a list of seven candidates from either AAA or FMCS. *Id.* The parties can then either agree on one of the listed candidates, or choose the hearing examiner by alternately striking names from the list, with the remaining name serving as the hearing examiner. *Id.* Taken as a whole, this procedure provides the parties adequate participation in the selection of their hearing examiner.

2. The statute provides for judicial review of the hearing examiner's award only on jurisdictional grounds or on allegations of "fraud, collusion or other unlawful means." § 143.057(j).

3. The American Arbitration Association, founded in 1926, is a public-service, not-for-profit organization offering a broad range of dispute resolution services through offices located in major cities throughout the United States. The Federal Mediation and Conciliation Service was created by Congress as an independent agency to further

### Delegation of Rule Application as well as Rule–Making

■ The third factor also weighs in favor of the delegation. Neither the AAA nor the FMCS are involved in making rules or in applying the law to particular individuals. Their delegation is limited to nominating or recommending individuals, the antithesis of the broad delegation which this factor disfavors.

### Conflict of Interest

■ The fourth factor weighs in favor of the delegation. Both the AAA and the FMCS are highly respected entities with expertise in the area of arbitration.[3] These delegates have no private interest at stake.[4] The City seems to believe that these entities are, by necessity, biased in favor of the disciplined officers because it is the officer who chooses to have an appeal heard before an independent hearing examiner. It is likely a perception of bias in favor of the City, on the part of the Civil Service Commission, that prompts officers to request that their appeal be heard under section 143.057. Regardless of the appearances on both sides, the statute, as written, appears to leave to the City's discretion the decision to request a list from either the AAA or the FMCS. § 143.057(d). This provision provides the City with additional input in the selection process, countering the police officer or fire fighter's ability to unilaterally opt for an independent hearing examiner. Therefore, the statute strikes a balance, and neither the AAA nor the FMCS would gain from alienating or favoring either side of the dispute.

### Criminal Authority

■ The fifth factor weighs in favor of the delegation. The AAA and FMCS have

the national labor policy. 29 U.S.C.A. § 171. FMCS's role is to assist parties and industries affecting commerce to settle their labor disputes through conciliation, mediation, and arbitration.

4. The FMCS does not charge an administrative or filing fee for furnishing arbitration services. The AAA prescribes an administrative fee schedule to compensate it for the cost of providing administrative services.

no power to impose criminal sanctions or define criminal acts. As mentioned above, their function is limited to supplying lists of arbitrators for the parties' consideration.

### Narrow Delegation

■ The sixth factor weighs in favor of the delegation. The delegation is narrow in duration, extent, and subject matter. The AAA and the FMCS serve as nominating bodies. Their only role is to prepare a list of qualified persons from which the parties select the arbitrator who will serve as their hearing examiner. *See* § 143.057(d). Under these circumstances, the authority to determine which arbitrators are neutral and qualified is sufficiently narrow.

### Special Qualifications or Training

■ The seventh factor weighs in favor of the delegation. The AAA and the FMCS are specialized entities with acknowledged expertise in selecting appropriately trained arbitrators to serve in particular cases. We have found statutes from twenty-eight jurisdictions providing for the selection of arbitrators or hearing examiners from lists provided by the AAA or the FMCS. *See* ALA.CODE § 28-9-8(e) (1975 & Supp.1997); ALASKA STAT. § 23.40.200(d) (Michie 1996); ARIZ.REV. STAT. ANN. § 15-541(A) (West Pocket Part 1997); ARK.CODE ANN. § 3-5-1108 (Michie 1996); CAL. EDUC.CODE § 89542.5(f) (West 1989); DEL.CODE ANN. tit. 2, § 1307(d)(2) (1993 & Supp.1996); D.C.CODE ANN. § 1-2431 (1997); FLA. STAT. ANN. § 30.075(4) (West 1998); HAW.REV.STAT. ANN. § 89-11(d) (Michie 1996); 5 ILL. COMP. STAT. 315/22 (West 1993); IND.CODE ANN. § 36-9-3-25(b) (West 1997); IOWA CODE ANN. § 123A.7(2) (West 1997); LA.REV.STAT. ANN. § 23:890(E) (West 1985); MD.CODE ANN., [TRANSP.] § 7-602(c)(2) (1993); MASS. GEN. LAWS ANN. ch. 161A, § 19D (West 1997); MICH. COMP. LAWS ANN. § 247.854 (West 1990); MINN.STAT. ANN. § 60A.177(3) (West 1996); MISS.CODE ANN. § 67-7-15(5) (1973 & Supp.1991); NEV. REV. STAT. § 391.317(2)(c) (1991); N.Y. [EDUC.] LAW § 3020-a(3)(McKinney 1995); OKLA. STAT. ANN. tit. 11, § 51-107 (West 1994); 53 PA. CONS.STAT. ANN. § 23539.1(b) (West 1957 & Pocket Part 1997); R.I. GEN. LAWS § 39-18-17(c) (1997); S.D. CODIFIED LAWS § 35-8A-9 (Michie 1992); TENN.CODE ANN. § 7-56-102(e) (1992); UTAH CODE ANN. § 17A-2-1032 (Michie 1991); WASH. REV. CODE ANN. § 41.56.450 (West 1991); WYO. STAT. ANN. § 12-9-115 (Michie 1997).

### Sufficient Standards

■ Finally, contrary to the court of appeals' conclusion, we believe the eighth factor weighs in favor of the delegation. The specific statutory standard provided is that the names are to be those of "qualified neutral arbitrators." § 143.057(d). While the Legislature did not set forth specific requirements or direct the delegates in how they are to determine which arbitrators are "qualified" and "neutral," these are not necessary if those terms themselves provide sufficient guidance to the delegates in exercising the discretion conferred on them by the Legislature. *See Edgewood Indep. Sch. Dist. v. Meno,* 917 S.W.2d 717, 740-41 (Tex.1995).

The Legislature enacted the Civil Service Act for the express purpose of "secur[ing] efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." § 143.001. To further this goal, chapter 143 provides administrative procedures and guidelines by which firemen and police officers can seek review of disciplinary actions. *See* §§ 143.010, 143.057. To ensure full and fair treatment, the Legislature provided that, at the option of the disciplined officer, appeal could be had to "an independent third party hearing examiner," instead of to the City's appointed Civil Service Commission. *See* § 143.057. In using the term "qualified", we perceive the Legislature intended the delegate to forward the names of individual arbitrators who are competent to understand the issues and render decisions. Likewise, the term "neutral" clearly refers to persons who are objective and impartial. Thus, the terms "qualified" and "neutral" have commonly understood meanings that provide the delegates with sufficient guidance in selecting arbitrators. TEX. GOV'T CODE § 312.002(a); *see also Blair v. Razis,* 926 S.W.2d 784, 787 (Tex. App.—Tyler 1996, no writ). "Requiring the

legislature to include every detail ... would ... defeat the purpose of delegating legislative authority." *Edgewood Indep. Sch. Dist.,* 917 S.W.2d at 740 (citation omitted). "While the Legislature must declare the policy and fix the primary standard ..., the policy and standards declared may be broad or general, so long as the idea embodied is reasonably clear and the standards are capable of reasonable application." Op. Tex. Att'y Gen. No. H–934 (1977) (*citing Jordan v. State Bd. of Ins.,* 160 Tex. 506, 334 S.W.2d 278 (1960); *Housing Auth. of City of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79 (1940)).

While we recognize that legislative action is not without bounds, *Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex.1983), applying the *Boll Weevil* test to the delegation at issue leads us to conclude that section 143.057(d) is not an overly broad delegation of legislative authority. Likewise, we find the legislative limitation on the City's ability to discipline its police officers constitutionally permissible. Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.