TEXAS DEPARTMENT OF TRANS-
PORTATION, Michael W. Behrens,
Robert L. Nichols, John W. Johnson,
and Ric Williamson, Petitioners,

v.

CITY OF SUNSET VALLEY, Terrance
R. Cowan, and Donald Hurwitz,
Respondents.

No. 03–0041.

Supreme Court of Texas.

Argued Feb. 4, 2004.

Decided Sept. 24, 2004.

Edward D. Burbach, Barry Ross McBee, Ronda Leigh Neff, Kristina Weber Silcocks, Rafael Edward Cruz, Rance L. Craft, Office of Attorney General, Philip A. Lionberger, Brown McCarroll, L.L.P., Jeffrey S. Boyd, Thompson & Knight, Greg Abbott, Attorney General of TX, Austin, Rick Thompson, Law Office of Deborah Hankinson PC, Dallas, John Stephen Toland, Watson Bishop London Galow, P.C., Austin, Idolina Garcia, Hermes Sargent Bates, LLP, Dallas, for Petitioners.

W. Thomas Buckle, Brad Rockwell and Jessica Scott, Douglas C. Young, Scanlan Buckle & Young, P.C., Sheri Joy Nasya Tolliver, Texas Civil Rights Project, Austin, for Respondent.

James C. Harrington, Austin, for Amicus Curiae Texas Civil Rights Project.

Justice O'NEILL delivered the opinion of the Court.

The Texas Department of Transportation (TxDOT) destroyed a portion of Jones Road in the City of Sunset Valley when it expanded State Highway 290. To regain the vital transportation link lost in the expansion, the City constructed a substitute street. We must decide whether the City can recover the cost of that construction from TxDOT under section 203.058(a) of the Texas Transportation Code, the common law of nuisance, or Article I, section 17 of the Texas Constitution. We hold that it cannot because (1) section 203.058(a) does not waive TxDOT's immunity from suit, nor is the City a state agency within the statute's purview; (2) absent an applicable waiver, TxDOT retained immunity from the City's common-law nuisance claim; and (3) TxDOT cannot be liable for an unconstitutional taking because the State owns the property that was appropriated for highway expansion. We also hold that the City's mayor and a council member lack standing to assert equal-protection claims on their own behalf or on behalf of the City's residents. Finally, we hold that the mayor's individual nuisance claim does not rise to the level of a constitutional taking and is thus barred by sovereign immunity. Accordingly, we reverse the court of appeals' judgment and render judgment for TxDOT.

## I. Background

In 1991, TxDOT expanded State Highway 290 to create a controlled-access highway. The expansion extended to parts of the City of Sunset Valley, a general-law municipality approximately one square mile in size located in southwest Travis County. To complete the project, TxDOT closed Jones Road at its western intersection with Brodie Lane. Jones Road was a main thoroughfare that connected the City's center to the northern, western, and southwestern portions of the City. According to the City, the road's closure increased threefold the travel time across the City, significantly impacting the City's ability to combat crime and respond to police and other emergencies. To remedy the problem, the City constructed a substitute road at its own expense.

In May 1998, the City sued TxDOT to recover its costs in constructing the substitute road. The City asserted several liability theories, including a right of reimbursement under section 203.058(a) of the

Texas Transportation Code, an unconstitutional taking under Article I, section 17 of the Texas Constitution, and common-law nuisance and trespass. TxDOT filed a plea to the jurisdiction asserting sovereign immunity and challenging the plaintiffs' standing, which the trial court denied. On interlocutory appeal, the court of appeals affirmed. 8 S.W.3d 727. On remand, the City's mayor, Terrance Cowan, and one of its council members, Donald Hurwitz, intervened in the suit on behalf of Sunset Valley's citizens claiming TxDOT had violated their equal-protection rights by failing to post adequate highway signs like those present in other similar municipalities and by installing high-mast floodlights not used on other controlled-access highways. Mayor Cowan also asserted individual nuisance claims for injuries that he alleged were particular to his property. The trial court held TxDOT liable to the City for the $836,192.80 cost of constructing reasonably necessary substitute facilities, and awarded the City approximately $857,000 in pre-judgment interest and attorneys' fees. The trial court also granted injunctive relief on the intervenors' equal-protection claims, abating the high-mast floodlights and ordering TxDOT to post adequate signs. It also awarded Cowan and Hurwitz $9,450 in attorneys' fees. Finally, the trial court awarded Cowan $3,648 in damages, as well as injunctive relief, based on his individual nuisance claim.

The court of appeals affirmed the trial court's judgment in part and reversed in part. 92 S.W.3d 540. It held that section 203.058(a) of the Texas Transportation Code supported the City's right to recover, but concluded that the statutory scheme required the Texas General Land Office to determine the amount of compensation that should be awarded and remanded the case accordingly. *Id.* at 547. Because it upheld the judgment based on the statuto-

ry claim, the court of appeals did not address the City's alternative constitutional or common-law claims. *Id.* In all other respects, the court of appeals affirmed the trial court's judgment. *Id.* We granted review to consider the plaintiffs' respective claims arising out of TxDOT's highway expansion and the closure of Jones Road.

## II. Texas Transportation Code

 State agencies like TxDOT are immune from liability in Texas unless the Legislature waives that immunity. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997); *Duhart v. State*, 610 S.W.2d 740, 741 (Tex.1980). We have long recognized the Legislature's exclusive power to create a cause of action that waives the State's immunity. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). But sovereign immunity is waived only when the Legislature has clearly and unambiguously expressed that intent. *See Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex.2000); *see also* TEX. GOV'T CODE § 311.034 (codifying common-law standard for immunity waiver: "[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

The City claims that the Legislature waived TxDOT's sovereign immunity in section 203.058(a) of the Texas Transportation Code, which provides:

If the acquisition of real property, property rights, or material by the department from a state agency under this subchapter will deprive the agency of a thing of value to the agency in the exercise of its functions, adequate compensation for the real property, property rights, or material shall be made.

TEX. TRANSP. CODE § 203.058(a). The City contends this provision clearly and unam-

biguously provides a judicial right of recovery against TxDOT for property that it appropriated in closing Jones Road. The court of appeals agreed, holding that the City is a "state agency" entitled to compensation under the statute. 92 S.W.3d at 546–47.

■ TxDOT claims that in enacting section 203.058(a) the Legislature did not intend to create a statutory cause of action for which the State may be sued, but merely intended to establish a mechanism by which state agencies may be compensated if TxDOT uses their property in exercising powers conferred under chapter 203. TxDOT further argues that, even if section 203.058(a) does create a right of action, the City is not a "state agency" as defined in the statute. *See* Tex. Transp. Code § 203.001(4) (defining "state agency" as "a department or agency of this state"). We agree with TxDOT on both points.[1]

■ Our primary objective when construing a statute is to ascertain and give effect to the Legislature's intent. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003) (citing *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002)). In discerning that intent, we begin with the " 'plain and common meaning of the statute's words.' " *Id.* (quoting *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999))). We must read the statute as a whole and not just isolated portions. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003) (citing *Gonzalez*, 82 S.W.3d at

327). If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute. *See McIntyre*, 109 S.W.3d at 745. We also consider the objective the law seeks to obtain and the consequences of a particular construction. Tex. Gov't Code § 311.023(1), (5); *see also McIntyre*, 109 S.W.3d at 745.

■ Nothing in the plain language of section 203.058 indicates the Legislature intended to waive immunity in situations like the one presented. The statute provides that when the State acquires property from a state agency pursuant to its chapter 203 powers, it must make "adequate compensation." Tex. Transp. Code § 203.058(a). The statute then outlines the actual accounting procedures by which compensation is to be accomplished. *See id.* § 203.058(b)-(e). For example, subsection (b) states that compensation will be paid on vouchers, and subsection (c) indicates to which budget item compensation shall be credited. Subsection (d) concerns situations in which it is unclear which appropriation item or agency account is to be credited. Finally, subsection (e) provides that the General Land Office will determine appropriate compensation if the agency and TxDOT cannot agree on an amount. Nowhere does the statute expressly waive TxDOT's immunity. That the statute imposes a financial obligation on the State does not in itself mean that the Legislature intended to create a private right of action, as evidenced by the fact that the statute expressly vests the

---

1. As a preliminary matter, the City claims TxDOT waived its right to challenge the judgment on the second ground by failing to properly raise it. It is true that TxDOT couched its argument to the court of appeals in terms of sovereign immunity. But as the court of appeals noted, TxDOT raised the issue in its

brief by arguing that the Transportation Code expressly excludes cities from compensation. 92 S.W.3d at 546 n. 2. Because TxDOT adequately challenged the City's right to recover under the Transportation Code, it did not waive the issue on appeal. *See* Tex.R.App. P. 38.1(e).

power to determine adequate compensation in the General Land Office. *Id.* § 203.058(e). In deciding whether the Legislature intended to waive TxDOT's immunity, "we must look at whether [the] statute makes any sense if immunity is not waived." *Kerrville State Hosp.*, 28 S.W.3d at 6. Clearly section 203.058 does, in that it provides a mechanism by which state agencies may ensure budgetary protection when property is transferred between them.

Moreover, the City is not a "state agency" within section 203.058(a)'s purview. The court of appeals determined that it was, relying on our decision in *Proctor v. Andrews*, 972 S.W.2d 729, 734 (Tex.1998). But that reliance is misplaced. In *Proctor*, we addressed whether a provision of the Civil Service Act that allowed police officers and fire fighters who had been suspended, passed over for promotion, or recommended for demotion to appeal to an independent third-party hearing examiner was an unconstitutional delegation of legislative authority or impermissibly infringed on a home-rule city's governmental authority to direct, control, and discipline its civil servants. *Id.* at 732. Presuming that the delegation did in fact infringe upon the City's police powers, we held that the infringement was permissible if the Legislature by general law clearly intended it. *Id.* at 733. Concluding that the Legislature did so intend, we made the following statement that the court of appeals in this case relied on: " 'Municipal corporations [including home rule cities] are created for the exercise of certain functions of government. . . . [I]n so far as their character is governmental, they are agencies of the state, and subject to state control.' " *Id.* at 734 (alteration in original) (quoting *Yett v. Cook*, 115 Tex. 205, 281 S.W. 837, 842 (1926)). Thus, we described the principal-agent relationship that exists between the State and a political subdivision in exercis-

ing certain governmental powers. *Id.; see also Payne v. Massey*, 145 Tex. 237, 196 S.W.2d 493, 495 (1946) ("Municipalities are creatures of our law and are created as political subdivisions of the state as a convenient agency for the exercise of such powers as are conferred upon them by the state."); *Tex. Nat'l Guard Armory Bd. v. McGraw*, 132 Tex. 613, 126 S.W.2d 627, 638 (1939) ("In its governmental capacity a city is a political subdivision of the State, and in many instances is considered as an agent of the State; and the State may use such agent in the discharge of its duties.").

That a municipality may exercise governmental powers as an agent of the State for certain purposes does not mean that it is a "state agency" within section 203.058(a)'s meaning. When used in this context, we have long recognized a distinction between agencies of the State, which generally exercise statewide jurisdiction, and political subdivisions like municipalities, which have limited geographic jurisdiction. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939–40 (Tex.1993) ("[A] political subdivision differs from a[n] . . . agency of the State. A political subdivision has jurisdiction over a portion of the State; a[n] . . . agency of the State exercises its jurisdiction throughout the State. . . . [T]he legislature has consistently recognized these distinctions between . . . agencies on the one hand and political subdivisions on the other."). Chapter 203 itself reflects that the Legislature recognized a distinction between a state agency, a political subdivision, and a municipality. Section 203.032 provides that a commission order under section 203.031 "supersedes a conflicting rule or ordinance of a state agency or subdivision of this state or any county or municipality." Tex. Transp. Code § 203.032. Yet the Legislature did not include a "political subdivision," "county," or

"municipality" in the definition of a "state agency." *Id.* § 203.001(4). We see nothing in the statutory language that would support the broad meaning that the City ascribes to the term "state agency" in section 203.058(a).

Because nothing in the statutory language indicates that the Legislature intended to waive immunity by creating a private right of action for entities like the City, we hold that it cannot seek compensation thereunder for TxDOT's closure of Jones Road.

### III. Common–Law Nuisance

■ The City's common-law nuisance claim is similarly foreclosed. *See City of Dallas v. Jennings,* 142 S.W.3d 310 (Tex.2004). TxDOT is immune from liability for its governmental actions unless that immunity is waived. *Id.* at 315. TxDOT's expansion of the State's highways is a governmental function. Tex. Civ. Prac. & Rem.Code § 101.0215(a). Therefore, TxDOT cannot be liable for damage resulting from its expansion of State Highway 290 without a clear waiver of immunity. As we have said, the City's reliance on section 203.058(a) of the Texas Transportation Code to establish that waiver is misplaced, and the City has asserted no other basis to support a waiver. Accordingly, TxDOT retained immunity from the City's common-law nuisance claim. The only claim the City could potentially assert against TxDOT, then, is for an unconstitutional taking under Article I, section 17 of the Texas Constitution, to which we now turn.

### IV. Unconstitutional Taking

■ Article I, section 17 of the Texas Constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." Tex. Const. art. I, § 17. The City claims that it is entitled to recover its cost of constructing a substitute road under this constitutional provision. TxDOT argues that, as against the State, the City has no proprietary title or vested property right in Jones Road sufficient to confer a right to compensation. Because the court of appeals affirmed the trial court's judgment based on the statutory claim, it did not address the City's constitutional claim. 92 S.W.3d at 546. Whether there has been a taking is a question of law for the court to decide. *See Tarrant Reg'l Water Dist. v. Gragg,* —— S.W.3d ——, ——, 2004 WL 1439646 (Tex.2004).

■ It is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken. Tex. Const. art. I, § 17 ("No person's property shall be taken...."). The City relies upon its fee simple title to Jones Road to support its right to compensation under the takings clause. TxDOT, on the other hand, contends the City merely holds the road in trust with legal title belonging to the State. As a result, TxDOT claims, the City's takings claim fails as a matter of law. We agree.

This Court has consistently recognized that the State has a superior ownership interest in its public roads. *See State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736 (1941); *Robbins v. Limestone County,* 114 Tex. 345, 268 S.W. 915, 918 (1925); *Travis County v. Trogden,* 88 Tex. 302, 31 S.W. 358, 359–60 (1895). We have also recognized that the State's ownership interest in its roads is superior to that of its political subdivisions. *See Robbins,* 268 S.W. at 918. In *Robbins,* the county argued that a recently enacted statute allowing the State to place public roads under the State Highway Department's direct control re-

sulted in an unconstitutional taking because the roads were built with funds raised by local taxation. *Id.* In response to questions certified by the court of civil appeals, we held that there could be no taking because the Legislature has sole and exclusive power pertaining to public roads and highways which may only be modified by another constitutional provision. *Id.* The county argued, as does the City here, that it was entitled to compensation under the Constitution because it held legal title to the roads taken. *Id.* We disagreed, stating that, even though legal title was taken in the county's name, title was held for the benefit of the State and the general public. *Id.* We specifically said: "Public roads are state property over which the state has full control and authority." *Id.; see also City of Mission v. Popplewell,* 156 Tex. 269, 294 S.W.2d 712, 715 (1956) ("The city controls the streets as trustee for the public. It has no proprietary title nor right to exclusive possession.").

■ The City attempts to distinguish *Robbins* and the cases upon which it relies, claiming that they involved control over road maintenance rather than outright destruction or closure as presented here. Once Jones Road was closed and ceased operating as a public road, the City argues, it was no longer held for the benefit of the public, thus entitling the City to compensation. We are not persuaded. The State's right to control its roads includes the right to close them, and we see nothing in the cases the City cites that would support the distinction it seeks to draw.[2] Neither do factual differences among those cases undermine their fundamental premise—that the State has a superior ownership interest in its roads.

■ This does not mean, however, that municipalities have no possessory interest in their roads. General-law municipalities like the City of Sunset Valley are political subdivisions created by the State and, as such, possess those powers and privileges that the State expressly confers upon them. *See Payne,* 196 S.W.2d at 495. As the State's agent or trustee, a municipality does possess a superior interest in its public roads vis-a-vis private citizens. *See Popplewell,* 294 S.W.2d at 715. Thus, we have said that the Legislature may grant cities and towns "exclusive dominion" over the public ways within their corporate or municipal boundaries. *See City of San Antonio,* 111 S.W.3d at 28 (recognizing in dispute between two cities that the Legislature granted general control to commissioners courts); *City of Fort Worth v. Taylor,* 162 Tex. 341, 346 S.W.2d 792, 793 (1961) (noting that a home rule city, by statutory grant, may regulate and control obstructions from streets and alley ways); *West v. City of Waco,* 116 Tex. 472, 294 S.W. 832, 834 (1927) (holding State can and did delegate authority to a city to regulate parking on a public square). We have also recognized the unique nature of school lands and that school districts, as political

---

**2.** The City cites several cases from other states that it contends support a municipality's constitutional right to compensation from the state. *See City of Chester v. Commonwealth Dep't of Transp.,* 495 Pa. 382, 434 A.2d 695 (1981); *State ex. rel. Ala. State Docks Dep't v. Atkins,* 439 So.2d 128 (Ala.1983); *State ex rel. State Highway Comm'r v. Cooper,* 24 N.J. 261, 131 A.2d 756 (1957). Those cases, however, are either distinguishable in that they involved statutorily created eminent-domain rights, or inapposite in their reliance on federal authority. The relationship between a city and state, which are not separate sovereigns, is not analogous to that between the federal government and a state. *See United States v. Carmack,* 329 U.S. 230, 242 n. 12, 67 S.Ct. 252, 91 L.Ed. 209 (1946) ("When ... a sovereign state transfers its own public property from one governmental use to another ... a like obligation does not arise to pay just compensation for it.").

subdivisions of the State, have an ownership interest in their property. *See Love v. City of Dallas,* 120 Tex. 351, 40 S.W.2d 20, 29 (1931); *Milam County v. Bateman,* 54 Tex. 153, 165 (1880). But none of these cases support the proposition that municipalities possess a superior ownership interest in public roads vis-a-vis the State that would support a right to compensation under the Constitution's takings clause when they are applied to another public use. Accordingly, the City's takings claim fails as a matter of law.

## V. Intervenors' Claims

Terrance Cowan, the City's mayor, and Donald Hurwitz, a City council member, intervened in this suit on behalf of the citizens of Sunset Valley. They alleged TxDOT violated their equal-protection rights by treating the citizens of Sunset Valley disparately from residents of other Texas communities. Cowan also asserted an individual private-nuisance claim, for which the trial court awarded him damages. TxDOT challenges the intervenors' standing to assert equal-protection claims and contends sovereign immunity protects it from Cowan's private-nuisance claim. We address each argument in turn.

## A. Equal Protection

■ Standing is a constitutional prerequisite to maintaining suit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993); *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). Standing to raise an equal-protection challenge requires the claimant to demonstrate an interest distinct from that of the general public such that the actions complained of have caused a particular injury. *See Williams v. Lara,* 52 S.W.3d 171, 178–79 (Tex.2001); *see also Hunt,* 664 S.W.2d at 324 ("Standing consists of some interest peculiar to persons individually and not as

members of the general public."). The "particularized injury" requirement "inheres in the nature of standing[, which] 'stems from two limitations on subject matter jurisdiction: the separation of powers doctrine and, in Texas, the open courts provision.'" *Brown v. Todd,* 53 S.W.3d 297, 302 (Tex.2001) (quoting *Tex. Ass'n of Bus.,* 852 S.W.2d at 443). These provisions require an actual grievance, not one that is merely hypothetical or generalized. *Id.* As a component of subject matter jurisdiction, we review a claimant's standing de novo. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 445.

■ Cowan and Hurwitz allege standing as members of a class, namely the residents of Sunset Valley, which they claim TxDOT targeted for disparate treatment. Specifically, they allege disparate treatment based on TxDOT's (1) failure to erect highway signs indicating Sunset Valley's exit and city limits, when similar municipalities in Texas have properly marked signs, and (2) installation of high-mast floodlights, when no other similar highway area in Texas uses them. The intervenors claim that Sunset Valley residents, as a group, were treated unequally with respect to these features and have, as a community, suffered particularized injury distinct from that of similar municipalities. The court of appeals agreed, concluding that the injuries alleged were unique to residents of Sunset Valley as compared to other regions, and that as residents Cowan and Hurwitz had standing to assert them. 92 S.W.3d at 551–53.

■ TxDOT contends that, to the extent the intervenors' claims are based on geographic disparate treatment, an equal-protection claim will not lie. *See Richards v. League of United Latin Am. Citizens,* 868 S.W.2d 306, 311–12 (Tex.1993) ("*LULAC*"). We agree. State and federal equal-protection guarantees relate to

" 'equality between persons as such, rather than between areas, and . . . territorial uniformity is not a constitutional prerequisite.' " *Id.* at 311 (quoting *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)); *see also Mouton v. State,* 627 S.W.2d 765, 767 (Tex.App.-Houston [1st Dist.] 1981, no pet.). In *LU-LAC,* we held that, although the plaintiffs could challenge the State's higher-education system based on their racial identity, they could not challenge it as residents of a geographic region of the State. *Id.* at 311–12, 314. This, of course, makes sense. When the State exercises governmental powers, such as building highways, it necessarily draws distinctions between different geographic areas. Entitling every citizen to equal benefits whenever government money is spent "would make almost all government programs unconstitutional." *Weber v. City of Sachse,* 591 S.W.2d 563, 567 (Tex.Civ.App.-Dallas 1979, writ dism'd). Insofar as the intervenors' equal-protection claims are brought on behalf of area residents for TxDOT's failure to provide signage or lighting equal to that provided in other geographic areas, it fails as a matter of law.

■ To bring an individual equal-protection claim, Cowan and Hurwitz must demonstrate that they were intentionally singled out and treated differently from others similarly situated. *County of Bexar v. Santikos,* 144 S.W.3d 455, 463, 2004 WL 1908328 (Tex.2004). According to Cowan and Hurwitz's pleadings and the evidence presented, though, all Sunset Valley residents suffered the same injury—inadequate signage and light pollution. There is simply no evidence that Cowan or Hurwitz were singled out or treated disparately with regard to these alleged highway effects. As we stated in *Brown v. Todd,* in which an individual voter asserted standing to challenge a city ordinance he had

voted against in a previous election, "the injury that [the voter] identifies is not unique to him. Indeed, it is shared by all living Houstonians who were among the . . . electors who actually voted against the proposed ordinance." 53 S.W.3d at 302. Although the voter in that case did not assert an equal-protection violation, the generalized grievance bar to standing that we upheld also applies to equal-protection claims like those asserted here. *See United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Because Cowan and Hurwitz could not assert equal-protection claims on their own behalf or that of Sunset Valley's residents, these claims fail as a matter of law.

## B. Private Nuisance

■ Cowan also asserted a private-nuisance claim based on light pollution, which TxDOT argues is barred by sovereign immunity. Because Cowan has asserted no statutory or other basis for a waiver of TxDOT's sovereign immunity, TxDOT can only be liable if the nuisance rises to the level of an unconstitutional taking under Article I, section 17 of the Texas Constitution. *See Jennings,* 142 S.W.3d at 312.

■ Cowan presented evidence that the high-mast floodlights shone extremely brightly on his property, destroying its rural character and creating a "spot light effect." But not every deleterious impact on private property amounts to a compensable taking. *Santikos,* 144 S.W.3d at 459. Instead, property impacts resulting from the construction of public works are compensable only to the extent they are not common to the community at large. *Id.* at 463; *Felts v. Harris County,* 915 S.W.2d 482, 485 (Tex.1996). Here, Cowan testified that the lights shine "into [his] neighborhood and [his] neighbors' property," and his pleadings also suggest that the lights similarly affect others in the community.

While the proximity of Cowan's property to Highway 290 may increase the degree of the lights' impact on his property in comparison to its impact on other properties in the area, that fact alone does not suffice to render his injuries constitutionally compensable. *See Felts,* 915 S.W.2d at 485. Because Cowan failed to demonstrate that the nuisance he alleged amounted to an unconstitutional taking, sovereign immunity protects TxDOT from Cowan's private-nuisance claim.

## VI.

For the foregoing reasons, we reverse the court of appeals' judgment and render judgment for TxDOT.