# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00661-CV

**Devvy Kidd; et al.,[1] Appellants**

v.

**Texas Public Utility Commission; AEP Texas Central Company; AEP Texas North Company; CenterPoint Energy Houston Electric, LLC; Texas-New Mexico Power Company; and Oncor Electric Delivery Company, LLC, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-12-003059, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

## O P I N I O N

This appeal can be considered a sequel of sorts to this Court's recent *Bonser-Lain*

decision,[2] in which we held in part that the remedies provided by the Administrative Procedure Act

---

[1] In addition to Devvy Kidd, the appellants are John Kidd; M.J. Shadden; John Cole; R.M. Dailey; Tracy Stephens; Patricia Stroyick; Dorothy Morrow; Charles Morrow; Amy Williams; David Williams; Norman Kuehn; Elizabeth Theiss; Rebecca Gutierrez; Marie Nugent; Steve G. Crutchfield; Linda A. Crutchfield; Kendall C. Palmer; M.A. Kirk; Kaydene Jordan; Bobby Jordan; Tom Brazen; David J. Allen; Patt Allen; David Scot Houlette; Denis Lullenkamp; Kathy Lullenkamp; China Lanier; Donna Lee Wilson; Julia Nathan, M.D.; Giselle Ellis; Gerald Sawyer; Beverely Hickman; Thomas Hickman; Cindy Carriger; Deborah Wiseman; Newly Sage; Russell Sage; Beth Biesel; Lacy Crary; Dardine Roedel; Harold Boenig; Joyce Kelley; Brenda Denholm; Michael Denholm; Mark Atkins; Robert Paul; Thelma Taormina; Nick Taormina; Sherman Rogers; Judy Chambers; Wayne Chambers; Jeffrey Emrich; Jill Freidman; Dolores Bolock; Bruce Bolock; Jackqulyn Bodenstedt; Twyla Parsons; Amanda M. Voelkel; Michelle T. Voelkel; Nell Reynolds; Stanley Reynolds; Katrina Evenhouse; Randall Evenhouse; Patricia Ignazio; Joseph Ignazio; Gina Gentile; James Gentile; John Tyson; Steve Gagnon; Thomas Bailey; Alfreda Ballard; James Benge; Linda Rund; Frank Harriss; Sam Harris; Lysbeth Warneke; Ralph Shawver; Shelley McCoy; Brian Dansby; Mo Bond; David Bond; John Buffa; Melissa Gochnour; Jeffrey Gochnour; Amy Watkins; Donald Anderson; Carol Dean; Michelle Guy; Terry Guy; Evelyn Montalvo; Abel Montalvo; Gay Armstrong; Dave Armstrong; Diane Wilson; John Wilson; Beatrice Worley; Lawrence Worley; Eva Finegan; Patti Glass; Ken Glass; Dagne Florine, Ph.D.; Cynthia Wilkes; Michael Wilkes; Lolly Nayola; John Tweedell; Carolynne Tweedel; Marita Segal; Howard Segal; Rita Trauth; Dr. Christopher Trauth; Toni White; Janice Pearson; Ricky Pearson; JoAnn Louise Zant; Nathan Lloyd Zant; Hoi Heldt; Rochelle Wilkes; Corey Wilkes; Daryl Hampton; Kathleen Grimes; Brian Grimes; Cindy Schafer; Mary Stayton; Ellen Mickle; Ingrid Stassi; Joe Stassi; Gaye Haehnel; Billy Haehnel; Erin Konkel; Nancy Lochridge; Byron Lockridge; Gemi Powell; and Gregory Johnson.

[2] *Texas Comm'n on Envtl. Quality v. Bonser-Lain*, 438 S.W.3d 887 (Tex. App.—Austin 2014, no pet.).

(APA)[3] for challenging agency actions in court do not extend to authorizing suits to challenge an agency's refusal to promulgate rules.[4] Here we consider whether, in an instance when an agency has denied a petition requesting it to promulgate rules—a decision that cannot in itself be judicially challenged under the APA, per *Bonser-Lain*—the APA has nonetheless conferred jurisdiction on courts to enforce an asserted right of the petitioners to obtain a public hearing at which they can present arguments and evidence to justify the rules they had requested. We conclude it does not.

## BACKGROUND

While the underlying controversy encompasses a more diverse array of issues, the facts material to the narrow jurisdictional questions before us are straightforward and undisputed. The appellants are approximately 135 individuals who, with others, joined in filing a May 17, 2012 petition to the Public Utilities Commission requesting that the Commission initiate rulemaking processes to address a number of perceived concerns related to the ongoing deployment of so-called "Smart Meters" by Texas electric utilities. In their petition, appellants also prayed that the Commission convene a public hearing at which they could present evidence of what they regarded as the compelling need for the rules they had requested. The Commission docketed appellants' petition as "Project No. 40404," published notice of the petition, afforded an opportunity for public comment, and received over 120 written comments, most of which favored the petition. However, the Commission did not additionally convene the public hearing that appellants had requested.

On July 13, 2012, the Commission issued an order denying appellants' rulemaking petition. In the order, the Commission explained that it already had another project pending,

---

[3] Tex. Gov't Code §§ 2001.001–.902.

[4] *See Bonser-Lain*, 438 S.W.3d at 893–94.

2

No. 40190, in which it had been studying the feasibility of an opt-out program "to address [Petitioners'] concerns" about Smart Meters and in which it had received "extensive comments that raise concerns like those in the petition in this project." The Commission deemed it "more efficient and effective . . . to consider smart meter concerns in one project," and opted to "focus its consideration of concerns about smart meters [in] Project No. 40190" instead of 40404.[5]

Seeking to challenge this administrative order in the Judicial Department, appellants filed suit against the Commission in Travis County district court. As the suit originated, appellants' claims sought primarily to compel the Commission to proceed with Project 40404 and initiate the rulemaking they had sought in their petition, which had sought rules more expansive than merely an opt-out program. Appellants also complained specifically of the Commission's failure to afford them the "full hearing and determination on the merits" they had requested, insisting that both the APA and Commission rules guaranteed them that procedural right. To establish the district court's subject-matter jurisdiction over their claims (which, again, named the Commission as the defendant and would have thereby implicated sovereign immunity),[6] appellants purported to rely on the waiver of immunity incident to the remedy provided by section 2001.038 of the APA, which authorizes "an

---

[5] Ultimately, the Commission's study of the issue would take the form of a third project, No. 41111, which yielded rule provisions providing consumers a means of opting out of metering by Smart Meters. *See* 38 Tex. Reg. 1328 (proposed Mar. 1, 2013), *adopted* 38 Tex. Reg. 5452 (Aug. 23, 2013), *codified at* 16 Tex. Admin. Code § 25.133 (eff. Sept. 1, 2013) (Non-Standard Metering Service); 38 Tex. Reg. 1328 (proposed Mar. 1, 2013), *adopted* 38 Tex. Reg. 5452 (Aug. 23, 2013), *codified as an amendment to* 16 Tex. Admin. Code § 25.214 (eff. Sept. 1, 2013) (Terms and Conditions of Retail Delivery Service Provided by Investor Owned Transmission and Distribution Utilities). Unless otherwise indicated, all cites to 38 Tex. Admin. Code are to rules promulgated by the Commission.

[6] *See, e.g.*, *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 172 (Tex. App.—Austin 2013, no pet.) ("Absent Legislative waiver, sovereign immunity deprives Texas courts of subject-matter jurisdiction over any suit against the State or its agencies or subdivisions." (citing *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620–21 (Tex. 2011) (per curiam))).

3

action for declaratory judgment" against an agency to determine "[t]he validity or applicability of a rule" where "it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."[7] The Commission answered and the other appellees identified in our caption intervened.

During the pendency of appellants' suit, this Court issued its decision in *Bonser-Lain*. That ruling prompted the Commission, with the briefing support of the other appellees, to file a plea to the jurisdiction seeking dismissal of all of appellants' claims based on *Bonser-Lain*'s holding that the APA's remedies do not authorize claims seeking to challenge an agency's decision not to promulgate rules.[8] In response, appellants acknowledged that *Bonser-Lain* precluded any claims purporting to seek judicial reversal of the Commission's denial of their rulemaking petition. However, appellants distinguished these claims focusing on the Commission's denial of their *rulemaking petition*, per se, from their claims complaining of the Commission's failure or refusal to convene a *public hearing* at which they could present argument and evidence to demonstrate the need for the rules they had requested. While *Bonser-Lain* was fatal to the former claims, it did not impact the latter, they insisted, because the APA and the Commission's rules conferred upon them

---

[7] Tex. Gov't Code § 2001.038(a); *see Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 544 (Tex. App.—Austin 2011, pet. denied) (observing that section 2001.038 waives sovereign immunity to the extent of the remedy the statute provides). Appellants' pleading similarly purported to invoke the right of judicial review provided under Subchapter G of the APA, which operates with respect to a state-agency decision in a "contested case." Tex. Gov't Code § 2001.171; *see Texas Dep't of Prot. & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 197 (Tex. 2004) (concluding that section 2001.171, by providing right of judicial review of agency order in a "contested case," waives sovereign immunity to extent of permitting that claim). At this juncture, appellants do not appear to rely on Subchapter G as a basis for jurisdiction, and it is plainly unavailing. *See* Tex. Gov't Code § 2001.003(1) (defining "contested case" as "a proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing").

[8] *See Bonser-Lain*, 438 S.W.3d at 893–94.

4

an "absolute procedural right" to present their position to the Commission through this public hearing (and, perhaps, prompt subsequent Commission action) that was not dependant upon, nor could be avoided by, the Commission's denial of their rulemaking petition or whether that decision could be challenged in court. Appellants similarly reasoned that the APA authorized them to enforce these hearing rights in court and obtain a remand to the Commission for purposes of conducting the public hearing.

The district court granted the Commission's plea in its entirety and dismissed all of appellants' claims for want of subject-matter jurisdiction. It is from that final judgment that this appeal is taken.

## ANALYSIS

Appellants seek reversal of the portion of the district court's judgment that dismissed their claims seeking a public hearing. As refined by the briefing and oral argument on appeal, appellants' position rests upon two sets of basic contentions: (1) the APA and Commission rules entitled them to a public hearing at which they could present evidence and argument to justify the rules they had requested, and this "absolute procedural right" is not dependent upon, nor limited by, the Commission's decision not to grant their rulemaking petition; and (2) the remedy and accompanying waiver of sovereign immunity provided by APA section 2001.038 authorizes appellants to sue the Commission to enforce this right and obtain judicial relief compelling the Commission to hold the hearing. Both sets of contentions rest principally upon construction of the APA, which presents a question of law that we review de novo.[9] We seek to ascertain the Legislature's intent, which is first and foremost a function of the objective meaning of the words it

---

[9] *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

5

has used in the statute.[10] We consider statutes as a whole rather than their isolated provisions.[11] We presume that the statute's language was chosen with care, with each word included, or omitted, purposefully.[12] We rely on the ordinary meaning of the words used, except where a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results that the Legislature could not have intended.[13] Additionally, where, as here, we are analyzing whether or the extent to which the Legislature has waived sovereign immunity, the Legislature has instructed us not to construe a statute to be such a waiver unless that intent is "effected by clear and unambiguous language."[14] Especially in light of the latter limitation, we must reject appellants' construction of the APA as unsupported by the statute's text.

As the statutory basis for the "absolute procedural right" to a public hearing that appellants claim, they cite section 2001.029 of the APA. That provision, titled "Public Comment," states:

(a)     Before adopting a rule, a state agency shall give all interested persons a reasonable opportunity to submit data, views, or arguments, orally or in writing.

(b)     A state agency shall grant an opportunity for a public hearing before it adopts a substantive rule if a public hearing is requested by:

---

[10] *See id.*; *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006).

[11] *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011) (citing *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004)).

[12] *See id.* (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008)).

[13] *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (citing *Mega Child Care*, 145 S.W.3d at 177)).

[14] Tex. Gov't Code § 311.034.

(1)     at least 25 persons;

(2)     a governmental subdivision or agency; or

(3)     an association having at least 25 members.

(c)     A state agency shall consider fully all written and oral submissions about a proposed rule.[15]

Appellants emphasize subsection (b) and insist that because more than 25 of them joined in requesting a public hearing, the provision requires that the Commission "shall"—a term of mandatory obligation[16]—grant them one.

As for how section 2001.038 of the APA authorizes them to seek judicial enforcement of this claimed right to a public hearing, appellants emphasize that courts have employed this remedy with some frequency to invalidate rules based on agency noncompliance with the procedural requirements for APA notice-and-comment rulemaking,[17] requirements that include section 2001.029.[18] Appellants similarly observe that section 2001.035 of the APA expressly provides that a "rule is voidable" unless adopted in substantial compliance with the Act's procedural requirements for rulemaking.[19] They add that these procedural requirements, including the public-hearing requirement of section 2001.029, are aimed at ensuring that interested persons and the

---

[15]  *Id*. § 2001.029.

[16]  *See id*. § 311.016 ("shall" generally "imposes a duty").

[17]  *See, e.g.*, *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714–15 (Tex. 2008) (holding that "rule" not properly promulgated under APA procedures is invalid); *Texas State Bd. of Pharmacy v. Witcher*, 447 S.W.3d 520, 534–36 (Tex. App.—Austin 2014, pet. filed) (same).

[18]  *See generally* Tex. Gov't Code §§ 2001.0225–.034 (APA's notice-and-comment rulemaking procedures).

[19]  *See id*. § 2001.035.

public have notice of proposed rules and the opportunity to offer meaningful input regarding them, and that the agency in turn "might exercise intelligently its responsibilities in arriving at the contents of the rule as finally adopted, in stating reasons for and against adoption, and in formulating the required contents of the adopting order, including a 'reasoned justification' for the rule."[20] Together, appellants reason, these statutory requirements and remedies embody "the strong objective of obtaining as much relevant public comment as possible on a proposed rule," coupled with a legislative policy judgment that "[f]ailing to follow [such] procedure is . . . fatal to the rulemaking process."

While appellants are correct about the salutary overarching objectives of the APA's notice-and-comment rulemaking requirements, they cannot quite connect their observations and reasoning to the actual statutory language that controls the district court's subject-matter jurisdiction here. Most critical is the text of section 2001.038, the waiver of sovereign immunity on which they rely in their attempt to establish jurisdiction. Section 2001.038, again, authorizes "an action for declaratory judgment" against an agency to determine "[t]he validity or applicability of a rule" where "it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."[21] Thus, "[f]rom the face of [section 2001.038]," as we have previously observed, "a challenged agency action that constitutes

---

[20] *Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 650–51 (Tex. App.—Austin 1997, no writ); *see National Ass'n of Indep. Insurers v. Texas Dep't of Ins.*, 925 S.W.2d 667, 670 (Tex. 1996) (noting that "purposes of [APA] section 2001.033 [reasoned justification and other required contents of agency order adopting rule] [are] to provide meaningful public participation in the rulemaking procedure, to allow opponents of the rule to formulate specific challenges, and to ensure that the agency carefully considers and analyzes a rule *before adopting it*"), *superseded on other grounds by statute as noted in Lower Laguna Madre Found. v. Texas Nat. Res. Conservation Comm'n*, 4 S.W.3d 419, 421 n.8 (Tex. App.—Austin 1999, no pet.).

[21] Tex. Gov't Code § 2001.038(a).

a 'rule' is among the facts (more precisely, a mixed question of law and fact) that must exist in order for a claimant to successfully invoke . . . a trial court's subject-matter jurisdiction over the claim for relief authorized by the statute."[22] The APA defines a "rule," in turn, as:

(A) . . . a state agency statement of general applicability that:

  (i) implements, interprets, or prescribes law or policy; or

  (ii) describes the procedure or practice requirements of a state agency;

(B) includes the amendment or repeal of a prior rule; and

(C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.[23]

Appellants' claims at issue do not complain of any Commission "rule"—rather, they arise in the admitted *absence* of a "rule," and focus on the procedure the Commission employed prior to its decision *not* to adopt a "rule."[24] Consequently, these claims are not within the waiver of sovereign immunity provided by section 2001.038.

In maintaining otherwise, appellants advocate in essence that we should broadly construe section 2001.038's "rule" element so as to authorize suits challenging the "rulemaking process" even where no "rule" has been adopted, those challenging "agency consideration of rulemaking petitions," or those challenging other agency action that does not precede or concern an adopted "rule." The Legislature has instructed us to do precisely the opposite—"*a statute shall*

---

[22] *Slay*, 351 S.W.3d at 544–45 (citing *Combs v. City of Webster*, 311 S.W.3d 85, 100–01 (Tex. App.—Austin 2009, pet. denied)).

[23] Tex. Gov't Code § 2001.003(6); *see Slay*, 351 S.W.3d at 545 (recognizing that this is the operative definition of "rule" when applying APA section 2001.038).

[24] *See also Slay*, 351 S.W.3d at 548 (observing that a "rule" must necessarily have some independent legal effect (citing Tex. Gov't Code § 2001.003(6))).

*not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language*"[25]—and section 2001.038 is "clear and unambiguous" in its restriction to, not expansion beyond, "rule" challenges.[26] Appellants further urge that if sovereign immunity is held to bar their claims here, APA section 2001.029 would have granted a "right" without a "remedy," which they regard as "a situation . . . so inequitable that it could not have been intended" by the Legislature. That sovereign immunity might arbitrarily deprive a litigant of judicial remedies for its grievances against government or be perceived to operate inequitably is, like it or not, a characteristic feature of this centuries-old doctrine,[27] and we must presume that the Legislature was well aware of such consequences when it limited section 2001.038's remedy as it did.[28] We are bound to give effect to these statutory limitations and the Legislative policy judgments they reflect.[29]

Nor is this jurisdictional defect susceptible to being cured.[30] Although appellants have not framed their claims in these terms, the claims' substance—predicated as they are on the claimed existence of a mandatory statutory duty on the part of the Commission to grant them a public

---

[25] Tex. Gov't Code § 311.034 (emphasis added).

[26] *Slay*, 351 S.W.3d at 544–45 (citing *City of Webster*, 311 S.W.3d at 100–01).

[27] *See, e.g.*, *Bacon*, 411 S.W.3d at 172 ("Simply described, sovereign immunity generally shields our state government's 'improvident acts'—however improvident, harsh, unjust, or infuriatingly boneheaded these acts may seem—against the litigation and judicial remedies that would be available if the same acts were committed by private persons." (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006)).

[28] *See, e.g.*, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (courts presume that the Legislature was aware of the background law and acted with reference to it).

[29] *See, e.g.*, *Bacon*, 411 S.W.3d at 172–73 (emphasizing judicial deference to Legislature's policy judgments in determining whether or how to waive sovereign immunity).

[30] *See Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("a pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect").

hearing—could potentially implicate the ultra vires exception to sovereign immunity if repleaded to name the commissioners, in their official capacities, as defendants rather than the Commission.[31] But that avenue would be available only if, as appellants insist, section 2001.029 imposed a non-discretionary duty upon the Commission to provide appellants the hearing they had requested.[32] It does not.

As appellees emphasize, the public-hearing requirement under APA section 2001.029 comes into play only if and when an agency decides to promulgate certain types of rules. This is readily apparent from the face of the requirement, found in subsection (b) of section 2001.029—"A state agency shall grant an opportunity for a public hearing *before it adopts a substantive rule* if a public hearing is requested . . . ."[33] Similarly, the broader public-participation requirement that appears in subsection (a) of section 2001.029—"a state agency shall give all interested persons a reasonable opportunity to submit data, views, or arguments, orally or in writing"—is preceded by the qualifying clause, "*Before adopting a rule*, . . . ."[34] Both requirements are phrased as

---

[31] *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009); *see also Sefzik*, 355 S.W.3d at 623 (permitting repleading in ultra vires context to substitute official-capacity defendants for agency).

[32] *See Heinrich*, 284 S.W.3d at 372–73 (to invoke ultra vires exception, claimant "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act"); *see also Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701–02 (Tex. App.—Austin 2011, no pet.) (to make that determination, we "construe the provisions of the [statutes] that define the scope of [the governmental body's] legal authority, apply them to the facts [the claimant has presented], and ascertain whether those facts constitute acts beyond [the agency's] legal authority" (citing *Heinrich*, 284 S.W.3d at 372–73; *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 n.8 (Tex. App.—Austin 2010, no pet.))).

[33] Tex. Gov't Code § 2001.029(b) (emphasis added).

[34] *Id*. § 2001.029(a) (emphasis added).

11

prerequisites to an agency's ultimate adoption of rules, not as an "absolute procedural right" to a public hearing in connection with a petition requesting an agency to adopt rules.

On the other hand, another subsection of section 2001.029, (c), requires that "[a] state agency shall consider fully all written and oral submissions about a proposed rule,"[35] a proviso that, if read in isolation, could conceivably lend some support to appellants' arguments. However, any such uncertainties quickly dissipate once section 2001.029 is placed in its proper context within the APA's rulemaking subchapter. The material provisions of that subchapter can be summarized as follows:

- Section 2001.021 provides that an "interested person by petition to a state agency may request the adoption of a rule."[36]

- In the event a rulemaking petition is submitted to an agency, section 2001.021 also requires that the agency "shall," within sixty days, either (1) "deny the petition in writing, stating its reasons for the denial"; or (2) "initiate a rulemaking proceeding under this subchapter."[37]

- No succeeding provision of the subchapter refers explicitly to an agency's denial of a rulemaking petition. However, several provisions impose additional requirements in the event an agency decides to take further steps toward making or adopting a rule. Per section 2001.023, an agency "shall give at least 30 days' notice of its intention to adopt a rule before it adopts the rule," and shall file such notice with the Secretary of State for publication in the *Texas Register*.[38] Section 2001.024 specifies the required content of the notice, which must include, among other requisites, "a brief explanation of the proposed rule," the rule's text, "a statement of the statutory or other authority under which the rule is proposed to be adopted,"

---

[35] *Id*. § 2001.029(c).

[36] *Id*. § 2001.021(a).

[37] *Id*. § 2001.021(c).

[38] *Id*. § 2001.023(a), (b).

12

"note[s]" concerning fiscal impact and "public benefits and costs," and "a request for comments on the proposed rule from any interested person."[39]

- From here, section 2001.027 addresses one possible conclusion of this rulemaking process: if an agency has not adopted, adopted as amended, or withdrawn the "proposed rule" within six months after the date of publication of notice in the *Texas Register*, the "proposed rule is withdrawn."[40]

- However, in the event the agency decides to "finally adopt[] a rule," section 2001.033 requires that it must issue a written order that includes a "reasoned justification for the rule as adopted"; a restatement of the "statutory provisions under which the rule is adopted and of how the agency interprets" those provisions so as to require or permit the rule; and "a certification that the rule, as adopted, has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority."[41] The "reasoned justification" must consist of "a summary of comments received from parties interested in the rule," "a summary of the factual basis for the rule as adopted which demonstrates a rational connection between the factual basis for the rule and the rule as adopted," and "the reasons why the agency disagrees with party submissions and proposals."[42]

It is within this framework that section 2001.029 requires that "[a] state agency shall consider fully all written and oral submissions about a proposed rule"; that "[b]efore adopting a rule," an agency "shall give all interested persons a reasonable opportunity to submit data, views, or arguments"; and that, in specified instances, an agency "shall grant an opportunity for a public hearing before it adopts a substantive rule."[43] Against this statutory backdrop, it becomes clear that the public-participation rights set forth in section 2001.029 operate with respect to rules "proposed" by the agency pursuant to sections 2001.023 and .024, not rules merely requested through

[39] *Id*. § 2001.024(a).

[40] *Id*. § 2001.027.

[41] *Id*. § 2001.033(a).

[42] *Id*.

[43] *Id*. § 2001.029.

13

rulemaking petitions contemplated by section 2001.021. And this context brings into further relief the nature of the public-hearing right on which appellants rely and refutes appellants' notion of an "absolute procedural right" to a public hearing on a rulemaking petition whenever sufficient numbers request one.[44]

In sum, section 2001.029 does not, as a matter of law, impose any duty on the part of the Commission to afford appellants a public hearing. That conclusion would be fatal to any attempt to replead their claims under the ultra vires rubric.[45] Appellants have suggested no alternative theories through which they might conceivably invoke the district court's subject-matter jurisdiction, nor do we perceive any.

---

[44] Similarly unavailing is appellants' reliance on the Commission's rules to support their contention that the submission of a petition for rulemaking invokes an "absolute procedural right" to a public hearing. *Compare* 16 Tex. Admin. Code § 22.282 (Notice and Public Participation in Rulemaking Procedures) (providing that an "opportunity for public hearing shall be granted" if the commission initiates a rulemaking project by publishing notice of the proposed rule in accordance with the APA), *with* 16 Tex. Admin. Code § 22.281(a) (Initiation of Rulemaking) (providing that while "[a]ny interested person may petition the commission requesting the adoption of a new rule," the Commission "*either* shall deny the petition . . . *or* shall initiate rulemaking proceedings") (emphases added).

[45] Appellees also urge that sovereign immunity would independently bar appellants' claims because the relief they seek would effectively "undo" the Commission's final order denying their rulemaking petition, as opposed to seeking the sort of "prospective" relief authorized within the ultra vires exception. *See Heinrich*, 284 S.W.3d at 372–73, 375–76 (explaining that claim under ultra vires exception to sovereign immunity must seek only "prospective" rather than "retrospective" relief); *Southwest Pharmacy Solutions, Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-11-00802-CV, 2013 Tex. App. LEXIS 7815, at *28–29 (Tex. App.—Austin June 27, 2013, no pet.) (recognizing that ultra vires claim that would "undo" previously-concluded agency action independently implicates sovereign immunity by seeking retrospective relief (citing *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 119–20 (Tex. App.—Austin 2007, no pet.)). In light of our preceding holdings, we need not address whether, for this reason, sovereign immunity would independently bar appellants' claims.

**CONCLUSION**

We affirm the district court's judgment granting the Commission's plea to the jurisdiction and dismissing appellants' claims.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   November 25, 2015