# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00469-CV

---

**Andrew Sansom; Heinz Stefan Roesch; Bee Spring, Ltd.; Hays County; and City of Kyle, Appellants**

**v.**

**Texas Railroad Commission; Christi Craddick, in Her Official Capacity as Commissioner of The Texas Railroad Commission; Wayne Christian, in His Official Capacity as Commissioner of The Texas Railroad Commission; Wei Wang, in His Official Capacity as Executive Director of The Texas Railroad Commission; Kari French, in Her Official Capacity as Director of The Oversight and Safety Division—Pipeline Safety of The Texas Railroad Commission; Permian Highway Pipeline, LLC; and Kinder Morgan Texas Pipeline, LLC, Appellees**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-002161, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellants—a group of landowners and governmental entities (the plaintiffs) that sought to enjoin the erection and operation of a now-completed natural gas pipeline owned and operated by Permian Highway Pipeline, LLC, and Kinder Morgan Texas Pipeline, LLC (respectively, Permian Highway and Kinder Morgan; collectively, the Pipeline Entities)—appeal from final judgment sustaining a plea to the jurisdiction raised by the Railroad Commission and its Commissioners (collectively, the Commission), entering summary judgment in favor of the Pipeline Entities, and dismissing the plaintiffs' request for a temporary injunction. Finding no reversible error in the district court's adjudication of the dispute, we will affirm the judgment.

## BACKGROUND

The Legislature has imbued gas utilities with the power of eminent domain. *See* Tex. Util. Code §§ 181.001 (defining "gas corporation" to include "gas utilities"), .004 ("A gas . . . corporation has the right and power to enter on, condemn, and appropriate the land, right-of-way, easement, or other property of any person or corporation."). To erect and operate a gas pipeline, a utility must submit to the Commission an "application for permit to operate [a] pipeline in Texas," also known as a "T-4 permit." *See Texas Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC*, 363 S.W.3d 192, 199–200 (Tex. 2012) (describing application and permit). The T-4 application process is governed by 16 Texas Administrative Code § 3.70, which the Commission refers to as "Rule 70." *See* 16 Tex. Admin. Code § 3.70 (R.R. Comm'n, Pipeline Permits Required).

In 2018, Kinder Morgan filed a T-4 application requesting designation as a gas utility and authorization to construct and operate a proposed 400-mile gas pipeline through privately owned real property in Blanco, Caldwell, Colorado, Crane, Crockett, Fayette, Gillespie, Gonzales, Hayes, Kimble, Lavaca, Menard, Pecos, Reagan, Reeves, Schleicher, and Upton counties. Kinder Morgan's application lists itself as the anticipated operator of the proposed pipeline and Permian Highway as the pipeline's owner. The application indicates that the pipeline, if constructed as planned, would lie buried in the ground at a depth of "at least three feet." The Commission issued the permit and subsequently an amended permit, and the Pipeline Entities began initiating condemnation proceedings, seeking to condemn a permanent easement of 25 feet of land on each side of the proposed route for the pipeline. The Pipeline Entities also sought to condemn a 65-foot-wide temporary construction easement on land running parallel to the proposed permanent easement.

2

The plaintiffs are a group of three landowners and two governmental entities that learned of the proposed pipeline and sued the Commission and the Pipeline Entities in Travis County district court. They brought claims against the Commission under the Administrative Procedure Act (the APA), Tex. Gov't Code § 2001.038, arguing that Rule 70 is unconstitutional in three independent respects. *See* Tex. Const. art. I, § 13 (guarantee of due course of law), § 17 (prohibition on grant of uncontrollable special privilege); art. II, § 1 (guarantee of separation of powers). The plaintiffs subsequently amended their petition to add, in the alternative, a claim for declaratory relief under the Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code § 37.003, asking the district court to declare unspecified statutes unconstitutional to the extent they allow private parties like the Pipeline Entities "to select the location and amount of private property to be subject to their exercise of eminent domain powers for natural gas pipelines in the State." In addition, the plaintiffs asked the trial court, based on their constitutional theories, to enjoin the Pipeline Entities from relying on the T-4 permit to condemn private property along the route they had selected for the proposed pipeline.

In response to the suit, the Commission raised a plea to the jurisdiction asserting that "Plaintiffs' claims, brought under Government Code Section 2001.038, impermissibly challenge the Texas Railroad Commission's absence of rules." The Commission then amended the plea to address the statutory challenge, arguing that the Plaintiffs had alleged "no viable constitutional claim that can circumvent the Commission Defendants' sovereign immunity because no viable interpretation of state law can support that claim." The Pipeline Entities moved for traditional summary judgment, offering evidence that they had properly obtained the T-4 permit and arguing, inter alia, that the plaintiffs "assert no claim" against the Pipeline Entities and therefore are not entitled to the injunctive relief sought.

3

After a hearing on the plea and the motion, the district court sustained the Commission's plea to the jurisdiction, granted the motion for summary judgment, and rendered final judgment disposing of all claims. The plaintiffs timely perfected this appeal. The Pipeline Entities and the Commission subsequently filed motions to dismiss the appeal, arguing that the controversy has been rendered moot by the completion and operation of the pipeline. After entertaining argument on the motions and the merits, we have denied those motions.

## DISCUSSION

### Plea to the Jurisdiction

The plaintiffs contend the district court erred by sustaining the plea to the jurisdiction. We disagree. A plea to the jurisdiction challenges the trial court's authority to entertain a dispute. *Heckman v. Williamson County*, 369 S.W.3d 137, 149 (Tex. 2012). In assessing a plea to the jurisdiction, our analysis begins with the live pleadings, and we determine whether the facts alleged affirmatively demonstrate that jurisdiction exists. *Id*. at 150. We construe the pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Id.* We may also consider any jurisdictional evidence of record. *Id.* If jurisdiction is affirmatively negated, a plea to the jurisdiction must be sustained without allowing the plaintiff an opportunity to amend its pleadings. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). We review assertions of governmental immunity, like all jurisdictional inquiries, de novo. *Id*. at 226.

The plaintiffs' APA claim provides no basis for the district court's exercise of jurisdiction over the dispute between the plaintiffs and the Commission. The APA waives sovereign immunity to the extent a plaintiff challenges the validity of a rule. *See* Tex. Gov't

4

Code § 2001.038. The Commission, however, argues that the plaintiffs are not challenging the *validity* of a rule but are instead impermissibly attempting to challenge the *absence* of a rule. *See Kidd v. Texas Pub. Util. Comm'n*, 481 S.W.3d 388, 390 (Tex. App.—Austin 2015, no pet.) ("[T]he remedies provided by the Administrative Procedure Act (APA) . . . do not extend to authorizing suits to challenge an agency's refusal to promulgate rules." (citing Tex. Gov't Code §§ 2001.001–.902; *Texas Comm'n on Envtl. Quality v. Bonser–Lain*, 438 S.W.3d 887, 895 (Tex. App.—Austin 2014, no pet.))); *Pharmserv, Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-13-00526-CV, 2015 WL 1612006, at *8 (Tex. App.—Austin Apr. 9, 2015, no pet.) (mem. op.) ("[N]o Texas court has ever held that an agency's refusal to promulgate rules is reviewable by courts . . . ." (citing *Bonser–Lain*, 438 S.W.3d at 895)). We agree with the Commission.

The plaintiffs' live petition expressly challenges the Commission's decision not to promulgate rules regarding pipeline route selection. In relevant part, it alleges, "The Railroad Commission . . . has not promulgated any rules that allow it to control and supervise the owners and operators of such pipelines in their exercise of eminent domain authority along the route that they privately choose at the beginning of the process." The petition further alleges that the Commission has "establish[ed] no standards whatever for the owners and operators of natural gas pipelines in their determinations of the necessity of any given pipeline's route," has "provide[d] no process for the public to be made aware of the basis for such privately made decisions," and has "afford[ed] no opportunity for the public or affected land owners to challenge or comment on the routing decisions and the exercise of eminent domain authority that follows therefrom." The plaintiffs refer to the absence of routing guidance as a "void left by the

5

Commission's failure" to promulgate rules on the subject. Accordingly, these allegations unambiguously and impermissibly target the absence of—rather than the validity of—a rule.

On appeal, the plaintiffs attempt to characterize their allegations as a challenge to the validity of Rule 70. Yet they complain only that Rule 70 "does not establish standards for exercise of the [eminent domain] power that a T-4 permit enables." Thus, even construing these allegations liberally, we conclude that the plaintiffs have impermissibly attempted to challenge the Commission's decision not to promulgate the desired rules—a decision that does not give rise to jurisdiction under the APA. The district court therefore did not err by sustaining the plea to the jurisdiction with respect to that claim.

Nor do the plaintiffs overcome sovereign immunity with their claim for declaratory relief. The UDJA provides that a person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity . . . or other legal relations thereunder." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). To establish jurisdiction over a constitutional challenge under the UDJA, the plaintiffs must plead a viable legal theory. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011); *Texas Dep't of Ins. v. Texas Ass'n of Health Plans*, 598 S.W.3d 417, 426 (Tex. App.—Austin 2020, no pet.). When considering whether a claim is "viable" for jurisdictional purposes, we generally do not evaluate the likelihood of success on the merits. *Andrade*, 345 S.W.3d at 11. Instead, the viability principle set forth in *Andrade* and its progeny simply requires "'that claims against state officials—like all claims—must be properly pleaded in order to be maintained.'" *See Tex. Dep't of Ins.*, 598 S.W.3d at 425–26 (quoting *Patel v. Texas Dep't of Licensing & Regul.*, 469 S.W.3d 69, 77 (Tex. 2015)). Accordingly, we evaluate jurisdictional viability by "'determining whether an opposing party can

6

ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy'" and, "'if necessary, reviewing the entire record to determine if any evidence supports subject-matter jurisdiction.'"  *See id.* at 426 (quoting *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007), and *Texas Educ. Agency v. American YouthWorks, Inc.*, 496 S.W.3d 244, 259 (Tex. App.—Austin 2016), *aff'd sub nom. Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54 (Tex. 2018) (emphasis omitted)).

Evaluating the pleadings in light of this standard reveals that the plaintiffs have not pleaded a viable UDJA claim.  In their live petition, the plaintiffs seek:

> declaratory judgment under Tex. Civ. Prac. & Rem. Code § 37.004(a) that the Texas statutory provisions governing the private exercise of eminent domain powers by natural gas utilities, including by [the Pipeline Entities] through the Railroad Commission's issuance of the PHP T-4 permit, are an unconstitutional delegation of legislative authority to natural gas pipelines in the State, including [the Pipeline Entities], under Article I, § 13, and Article II, § 1, of the Texas Constitution, and an uncontrolled grant of special privileges under Article I, § 17(d), insofar as the Texas statutes and Commission Defendants allow natural gas pipelines in the State, including [the Pipeline Entities], to select the location and amount of private property to be subject to their exercise of eminent domain powers for natural gas pipelines in the State, including the PHP.

The claim, as pleaded, does not state which statute—much less which "statutory provision" of which statute—is allegedly unconstitutional.  Nor does it explain how the Commission is the proper defendant to any such statutory challenge.  Even liberally construing the pleadings in favor of the plaintiffs, this claim is insufficient to allow the Commission to "ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy."  *See id.*  The pleading is therefore insufficient to overcome the Commission's immunity from suit.

7

The only remaining question with respect to the plea to the jurisdiction is whether the district court should have afforded the plaintiffs an additional opportunity to amend their petition—notwithstanding their prior amendment's attempt to cure any pleading defects—to plead further allegations that might give rise to the district court's jurisdiction over their dispute with the Commission. *Compare Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011) (affording opportunity to amend where intervening precedent clarified proper defendants to suit), *and American Home Assur. Co. v. Texas Workers' Comp. Comm'n*, No. 03-00-00545-CV, 2001 WL 252087, at *4 (Tex. App.—Austin Mar. 15, 2001, no pet.) (mem. op.) (affording opportunity to amend to plead additional facts that might cure jurisdictional defect), *with Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) (denying opportunity to replead where party asked for remand "to plead new claims"), *and Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (denying opportunity to amend where plaintiff "ha[d] made no suggestion as to how to cure the jurisdictional defect"). Yet the plaintiffs, in responding to the plea to the jurisdiction, did not identify any alternate set of allegations that might give rise to that jurisdiction. Nor have they done so on appeal. Therefore, because we conclude the allegations before us affirmatively negate the existence of jurisdiction, *Miranda*, 133 S.W.3d at 227, we will affirm the district court's decision to sustain the Commission's plea.

**Summary Judgment**

The plaintiffs also contend the district court erred by entering summary judgment in favor of the Pipeline Entities and dismissing their request for injunctive relief. Again, we disagree. A movant prevails on a motion for summary judgment by showing its entitlement to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. v. Knott*,

128 S.W.3d 211, 215–16 (Tex. 2003). A defendant can establish that entitlement by conclusively negating at least one essential element of the claim brought against him. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). If the defendant does so, the plaintiff will avoid summary judgment only by presenting evidence that generates a fact issue on the contested element. *Nixon v. Mr. Prop. Mgmt. Co*., 690 S.W.2d 546, 548–49 (Tex. 1985). In evaluating the arguments for and against summary judgment, a court must take as true evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubt in favor of the non-movant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). We review summary judgment de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

"To obtain a temporary injunction, the applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002) (citations omitted). The Pipeline Entities contend the district court correctly entered summary judgment in their favor and dismissed the request for a temporary injunction because the plaintiffs have not pleaded any claims that can properly be raised against them. Moreover, they argued in their motion for summary judgment that "[t]he Texas Constitution places only two limitations on the exercise of eminent domain: public use and adequate compensation." Thus, even assuming the Pipeline Entities are proper defendants to the plaintiffs' claims pursuant to Article I, Section 13; Article I, Section 17; and Article II, Section 1 of the Texas Constitution, the district court correctly dismissed the claims and denied the relief sought.

9

Article I, Section 13, of the Texas Constitution provides, in relevant part, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." "While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction" and thus "have traditionally followed contemporary federal due process interpretations of procedural due process issues." *University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995); *see also City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 234 (Tex. 2011) (making similar observation in context of takings dispute). The due process clause provides, in relevant part, "No state . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Due process requires notice, a hearing, and "just compensation" for any property taken. *Walker v. City of Hutchinson, Kan.*, 352 U.S. 112, 115 (1956) ("[D]ue process requires that an owner whose property is taken for public use must be given a hearing in determining just compensation," and "[t]he right to a hearing is meaningless without notice.").

Here, the plaintiffs allege that the Pipeline Entities are depriving the plaintiffs of due course by "forcibly tak[ing]" the desired tracts of land pursuant to the authority vested by Section 181.004 of the Utilities Code and without input from stakeholders. But the exercise of eminent domain by the Pipeline Entities is governed by the provisions set forth in Chapter 21 of the Property Code. *See* Tex. Prop. Code § 21.011 ("Exercise of the eminent domain authority *in all cases* is governed by sections 21.012 through 21.016 of this code." (emphasis added)). That Chapter requires notice, a hearing, and a determination of just compensation if the condemnor and the condemnee disagree as to the value or condemnability of the property. *See City of Tyler v. Beck*, 196 S.W.3d 784, 786 (Tex. 2006) (per curiam) ("The Texas eminent-domain scheme is a

10

two-part process that begins with an administrative proceeding followed, if necessary, by a judicial one."). Because the statute sets forth a procedure to challenge the Pipeline Entities' taking of the property and any compensation provided therefor, and because the plaintiffs conceded to the district court that they had not yet pursued the statutory procedure to challenge the allegedly improper taking, the claim fails as a matter of law. *See City of Dallas*, 347 S.W.3d at 236 ("When there exists provision for compensation . . . a constitutional claim is necessarily premature.").

Article I, Section 17 of the Texas Constitution provides, in relevant part, "When a person's property is taken [for public use] . . . no irrevocable or uncontrollable grant of special privileges or immunities shall be made." "[T]his particular clause of the constitution was intended to prohibit the legislature from granting any 'special privilege or immunity' in such way, or of such character, as that it could not be subsequently annulled or declared forfeited for such cause as might be defined by the law, or condemned in the exercise of eminent domain . . . and it was further intended that 'all privileges and franchises' granted by the legislature, or under its authority, should at all times remain subject to legislative control and regulation." *City of Houston v. Houston City St. Ry*., 19 S.W. 127, 131 (Tex. 1892). In other words, the clause was intended to prevent the Legislature from somehow becoming bound by its own generosity and being left unable to "control" privileges previously granted. *See* George D. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 62–65 (1977) (describing history and interpretation of Article I, Section 17). But it is now well settled that "what the Legislature giveth, the Legislature may taketh away," *Texas Educ. Agency v. Academy of Careers & Techs., Inc*., 499 S.W.3d 130, 136 (Tex. App.—Austin 2016, no pet.) (quoting *Ivey v. State*, 277 S.W.3d 43, 47 (Tex. Crim. App. 2009)), and there is simply no indication here that

11

the Legislature, having afforded utilities the authority to exercise eminent domain and operate pipelines, lacks the authority to revoke those privileges at any time. There is therefore no "uncontrollable grant of special privilege" of which the plaintiffs might complain, and the claim fails as a matter of law.

Article II, Section 1 of the Texas Constitution provides for three distinct branches of government, each vested with a unique set of powers:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

The plaintiffs complain that allowing the Pipeline Entities to select the routes for their pipelines represents an unconstitutional delegation of power properly reserved for the Legislature. They complain:

> The Railroad Commission Defendants have authorized [the Pipeline Entities] *to exercise the legislative power of choosing the route and the property to be forcibly taken without any guiding standards, in violation of Art. II, § 1, of the Texas Constitution*. By exercising such legislative power in choosing the route and the property to be forcibly taken without any guiding standards, and by pursuing their business in this regard under the PHP T-4, [the Pipeline Entities] are acting in violation of Art. II, § 1, of the Texas Constitution.

(Emphasis added). But as the Supreme Court of Texas has explained, a complaint of impermissible private delegation is not an alleged violation of Article II, Section 1 of the Texas Constitution. *See Proctor v. Andrews*, 972 S.W.2d 729, 732–33 (Tex. 1998) ("[W]e note that all parties erroneously rely on Article II, Section I of the Texas Constitution as the source for the constitutional prohibition of delegations of legislative authority to private entities."). Instead,

12

"the constitutional provision that would be violated by an impermissible delegation is [a]rticle III, Section 1," *see id.* at 733, which provides that "[t]he Legislative power of this State shall be vested in a Senate and House of Representatives," *see* Tex. Const. art. III, § 1. Where a litigant erroneously brings a private-delegation complaint under Article II, Section 1, courts are to analyze the claim as though it had been properly pleaded under the correct constitutional provision. *See Proctor*, 972 S.W.2d at 733. We will do so here.

As a general matter, "the Legislature may not delegate its legislative power to others." *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 465–66 (Tex. 1997). Yet, "legislative delegation of power to enforce and apply law is both necessary and proper" because of the impossibilities inherent in a complex society for the Legislature to contend "with every detail involved in carrying out its laws." *Id.* at 466. Therefore, the Legislature may delegate legislative power to local governments, administrative agencies, and even private entities under certain conditions. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000).

Delegations to private entities raise more troubling constitutional issues than delegations to public entities because private delegates are not elected by the people, appointed by a public official or entity, or employed by the government, and such delegations may allow one with a personal or pecuniary interest to adversely affect the public interest. *See id.* at 874; *Boll Weevil*, 952 S.W.2d at 469. To determine whether a delegation of legislative power to a private party is constitutionally permissible, courts consider eight factors:

1. Are the private delegate's actions subject to meaningful review by a state agency or other branch of state government?

13

2. Are the persons affected by the private delegate's actions adequately represented in the decisionmaking process?

3. Is the private delegate's power limited to making rules, or does the delegate also apply the law to particular individuals?

4. Does the private delegate have a pecuniary or other personal interest that may conflict with his or her public function?

5. Is the private delegate empowered to define criminal acts or impose criminal sanctions?

6. Is the delegation narrow in duration, extent, and subject matter?

7. Does the private delegate possess special qualifications or training for the task delegated to it?

8. Has the Legislature provided sufficient standards to guide the private delegate in its work?

*Boll Weevil,* 952 S.W.2d at 472. All eight factors must be considered, but no one factor is dispositive. *See Proctor*, 972 S.W.2d at 735.

The plaintiffs contend the pipeline routing delegation is unconstitutional in that it does not satisfy the eight-factor standard set forth in *Boll Weevil*. The plaintiffs, however, overlook the predicate inquiry of whether the function in question—the routing of privately owned gas pipelines—is legislative in the first place. *See City of Garland v. Byrd*, 97 S.W.3d 601, 605 (Tex. App.—Dallas 2002, pet. denied) ("To resolve this issue, we must first determine whether the power granted to the private hearing examiner under section 143.057 is legislative in nature."); *Texas Vending Comm'n v. Headquarters Corp.*, 505 S.W.2d 402, 404 (Tex. App.—Austin 1974, writ refused n.r.e.) ("The problem thus posed by this appeal is the old and gray-headed one of determining whether the function conferred by the statute . . . is legislative . . . .").

14

"Defining what legislative power is or when it has been delegated is no easy task." *FM Props.*, 22 S.W.3d at 873. The word "legislative" is an adjective that refers to matters "[o]f, relating to, or involving lawmaking or to the power to enact laws; concerned with making laws." *Black's Law Dictionary* (11th ed. 2019). "It includes the power to set public policy." *FM Props.*, 22 S.W.3d at 873. It is unclear from this record how the challenged conduct—the gas utilities' selection of the routes for privately owned pipelines—constitutes legislative action. It does not involve lawmaking or the power to make laws. The plaintiffs argue the routing is "legislative" in that it involves questions of public policy. Yet they offer no support for the argument.

But even assuming, arguendo, the challenged conduct is legislative in nature, the plaintiffs have not generated a genuine question that the *Boll Weevil* test is not satisfied here. First, it is undisputed that pipeline routing is subject to extensive regulatory oversight. *See, e.g.*, 33 U.S.C. § 1344 (Clean Water Act); 16 U.S.C. §§ 1531–1544 (Endangered Species Act); 54 U.S.C. § 306108 (National Historic Preservation Act); Tex. Nat. Res. Code § 191.0525(c) (Texas Historic Preservation Act); Tex. Parks & Wild. Code § 26.001 (imposing notice-and-hearing requirements for any taking of "park, recreation area, scientific area, wildlife refuge, or historic site"); 43 Tex. Admin. Code § 21.37 (Dep't of Transp., Right of Way—Design) (requiring approval of every proposed crossing of state right of way). Second, it is equally undisputed that affected landowners are entitled to notice, hearing, and judicial review of any disputed taking, *see* Tex. Prop. Code § 21.011, and the record in this case reflects that multiple public meetings were held to allow stakeholders to provide input. Third, no one asserts that the private routing of pipelines involves the making or enforcement of rules. Fourth, although undisputed aspects of the record reflect that the Pipeline Entities have a pecuniary

15

interest in routing their pipelines in the most efficient manner possible,[1] that alone is not sufficient to render this ostensible delegation standardless, particularly given the statutory and regulatory constraints on site selection. *See Proctor*, 972 S.W.2d at 735; *Byrd*, 97 S.W.3d at 610 (considering lone factor not weighing in favor of constitutionality insufficient to overcome other factors). Fifth, the plaintiffs have conceded that the challenged delegation does not allow for the imposition of criminal sanctions. Sixth, the subject matter is narrow in scope. Seventh, the plaintiffs have produced no evidence that the Pipeline Entities lack the qualifications necessary to determine the best proposed location of the pipelines. Eighth, and as already described, the challenged conduct is subject to multiple statutory and regulatory constraints that together provide the gas utilities with sufficient standards to guide their work. And finally, while the holding is not binding on this Court, we note that the federal courts have already rejected the same delegation arguments presented here. *See Boerschig v. Trans-Pecos Pipeline, L.L.C.*, 872 F.3d 701, 707–09 (5th Cir. 2017). On this record, the Pipeline Entities were entitled to summary judgment on the delegation claim, *see Byrd*, 97 S.W.3d at 610 (affirming summary judgment after holding *Boll Weevil* standard satisfied as matter of law), and the district court did not err by denying the requested injunction predicated on plaintiffs' constitutional theories.

## CONCLUSION

Having found no error in the district court's adjudication of the plea to the jurisdiction and the motion for summary judgment, we affirm its final judgment dismissing all

---

[1] For example, David Grisko, Kinder Morgan's vice president of business development for its intrastate pipelines division, testified of the hundreds of millions of dollars the company would likely recover at completion of the pipeline and of the $32.8 million Kinder Morgan would lose during each month of any delay in construction.

claims against the Commission and rendering a take-nothing judgment against the plaintiffs on their claims against the Pipeline Entities.

_____

Edward Smith, Justice

Before Justices Goodwin, Triana, and Smith
  Concurring Opinion by Justice Goodwin

Affirmed

Filed:  May 20, 2021